PEOPLE v McFALL

Docket No. 187722. Submitted April 2, 1997, at Lansing. Decided July 8, 1997, at 9:15 A.M. Leave to appeal sought.

John B. McFall was convicted by a jury in the Emmet Circuit Court, Charles W. Johnson, J., of assault with intent to commit criminal sexual conduct involving sexual penetration and fourth-degree criminal sexual conduct. He pleaded guilty of being a third-offense habitual offender and was sentenced to concurrent terms of thirteen to twenty years' imprisonment for the assault conviction and one to two years' imprisonment for the criminal sexual conduct conviction. The defendant appealed.

The Court of Appeals *held*:

1. A defendant requesting the presence of an out-of-state witness pursuant to the uniform act to secure the attendance of witnesses from without a state in criminal proceedings, MCL 767.91 *et seq.*; MSA 28.1023(191) *et seq.*, must designate the proposed witness' location with a reasonable degree of certainty, file a timely petition, and make out a prima facie case that the witness' testimony is material. Here, the defendant failed to present sufficient evidence to establish a prima facie case that the testimony of his brother, who was in jail in Chicago, Illinois, was material. The trial court did not abuse its discretion in failing to certify that the defendant's brother was a material witness in the defendant's case.

2. There was sufficient evidence to support the jury's conclusion that the defendant intended to sexually penetrate the complainant.

3. The trial court did not a violate the defendant's right to equal protection in instructing the jury pursuant to CJI2d 20.25.

4. The trial court did not err in refusing the defendant's request for a jury instruction that when there are two conflicting versions of what transpired and there is a reasonable doubt regarding which is true, it is the duty of the jury to accept the version that is consistent with the innocence of the defendant. Where, as here, there is direct evidence supporting a conviction, such an instruction need not be given.

5. The defendant's sentence for his assault conviction was proportional.

Affirmed.

1. CONSTITUTIONAL LAW — WITNESSES — CRIMINAL LAW.

    A criminal defendant's right to compulsory process is not absolute and requires a showing that the witness' testimony would be both material and favorable to the defense; the right to secure witnesses in one's favor must be balanced against the state's legitimate interest in the integrity of the adversary process and the fair and efficient administration of justice. (US Const, Am VI).

2. WITNESSES — CRIMINAL LAW — ATTENDANCE OF WITNESSES — OUT-OF-STATE WITNESSES.

    A defendant requesting the presence of an out-of-state witness pursuant to the uniform act to secure the attendance of witnesses from without a state in criminal proceedings must designate the proposed witness' location with a reasonable degree of certainty, file a timely petition, and make out a prima facie case that the witness' testimony is material; unsupported statements that the proposed witness is material or necessary are insufficient to establish a prima facie case of materiality (MCL 767.91 *et seq.*; MSA 28.1023[191] *et seq.*).

3. CONSTITUTIONAL LAW — WITNESSES — ATTENDANCE OF WITNESSES — OUT-OF-STATE WITNESSES.

    A trial court must not exercise its discretion to deny a request under the uniform act to secure the attendance of witnesses from without a state in criminal proceedings in a manner inconsistent with the defendant's Sixth Amendment right to compulsory process; a request under the act must be carefully scrutinized both to protect the accused's right to compulsory process and to prevent useless or abusive issuance of process (MCL 767.91 *et seq.*; MSA 28.1023[191] *et seq.*).

4. CRIMINAL LAW — JURY INSTRUCTIONS.

    It is not error for a trial court in a trial where there is direct evidence supporting the defendant's conviction to refuse the defendant's request for a jury instruction that when there are two conflicting versions of what transpired and there is reasonable doubt regarding which is true, it is the duty of the jury to accept the version that is consistent with the innocence of the defendant.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Robert J. Engel*, Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

State Appellate Defender (by *Kristina Larson Dunne*), for the defendant on appeal.

Before: SAAD, P.J., and NEFF and JANSEN, JJ.

PER CURIAM. Defendant appeals as of right his convictions by a jury of assault with intent to commit criminal sexual conduct involving sexual penetration, MCL 750.520g; MSA 28.788(7), and fourth-degree criminal sexual conduct, MCL 750.520e(1)(a); MSA 28.788(5)(1)(a). Defendant subsequently pleaded guilty of being a third-offense habitual offender, MCL 769.11; MSA 28.1083, and was sentenced to concurrent terms of thirteen to twenty years' imprisonment for the assault conviction and to one to two years for the criminal sexual conduct conviction. We affirm defendant's convictions and sentences.

I

The complainant testified that she met the defendant and his brother, William McFall, at the home of her friend Robert Keschick and that she agreed to give defendant a ride in her van in exchange for $5. The complainant testified that defendant directed her to a house, where he got out and indicated that he would return. Meanwhile, the complainant got out of her van, pulled down her pants, and began to urinate. The complainant testified that she then felt defendant's hand between her legs and that he touched her genital area. She said that when she tried to resist, defendant grabbed her and started choking and hitting her. The complainant testified that defendant forced her inside the van and ordered her to pull her pants all the way down, threatening to kill her. During the struggle, the complainant testified, defendant

"was fumbling with his hand down by his pants." According to the complainant, defendant eventually let her go without completing a sexual act.

At trial, defendant testified that, in the van, the complainant repeatedly asked defendant to give her some of the prescription medication she had seen defendant with earlier in the evening. Defendant testified that after the complainant urinated outside the van, she grabbed defendant's bag containing the pills. According to defendant, he choked her "a little bit" until she let go of the bag. Defendant admitted that they were "kind of tussling" and that he hit her a few times. Defendant testified that he eventually picked up his things and walked away. Defendant denied trying to take the complainant's pants down or grabbing between her legs and testified that there was nothing sexual in what he did. Defendant further denied threatening to kill the complainant.

II

Defendant challenges the circuit court's denial of his request to secure at trial the presence of his brother, William McFall, who was incarcerated in Illinois. Specifically, defendant insists that the court's ruling denied defendant his Sixth Amendment right to compulsory process for presenting witnesses in his favor. We disagree.

A

Defense counsel presented a subpoena to the prosecutor for defendant's brother, noting that he was "in care of the Cook County Jail, Chicago, Illinois." At a hearing regarding defendant's request to secure his

brother's attendance at trial, defense counsel repre-
sented the brother's proposed testimony as follows:

> His testimony, as I understand it, would be that he was at
> the house when [the complainant] showed up, that she
> came back from dinner, that she had been drinking or
> imbibing something, that when she walked in, she was ask-
> ing if someone had drugs and that someone, we don't know
> who, told her that [defendant] might.
>
> He can testify that, in fact, she was asking for percodan
> or percocet and some other drug, all of which are prescrip-
> tion and that she left with [defendant] after having been
> told that he may have the drugs.

Defense counsel acknowledged that defendant's
brother was not a res gestae witness and that he had
not seen the "actual events," i.e., the alleged assault.
Counsel stated defendant wished to present his
brother to corroborate his testimony that the com-
plainant was asking for drugs and that she offered to
give defendant a ride when she learned that he had
some.

B

The Compulsory Process Clause of the Sixth
Amendment guarantees every criminal defendant the
right to present witnesses in their defense. *Washing-
ton v Texas*, 388 US 14, 17-18; 87 S Ct 1920, 18 L Ed
2d 1019 (1967). To implement this right when there is
a need for the testimony of a material witness who
resides beyond the subpoena power of the prosecut-
ing state, Michigan has adopted the uniform act to
secure the attendance of witnesses from without a

state in criminal proceedings (the Uniform Act), MCL 767.91 *et seq.*; MSA 28.1023(191) *et seq.*[1]

Under the Uniform Act, a judge may, in certain circumstances, certify that a proposed witness is material to a criminal proceeding:

> If a person in a state, which by law provides for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, a judge of the court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found. [MCL 767.93(1); MSA 28.1023(193)(1).]

The Uniform Act and its attendant judicial process may be invoked by either the prosecutor or the defendant. *People v Williams*, 114 Mich App 186, 201; 318 NW2d 671 (1982).

A criminal defendant's right to compulsory process, though fundamental, is not absolute. To the contrary, it requires a showing that the witness' testimony would be both material and favorable to the defense.

---

[1] In *Barber v Page*, 390 US 719, 723-724, n 4; 88 S Ct 1318; 20 L Ed 2d 255 (1968), the United States Supreme Court opined that states would likely secure the attendance of an incarcerated out-of-state witness by a writ of habeas corpus ad testificandum. We note, however, that other states have used the Uniform Act under these circumstances, as did the circuit court in the instant case. See, e.g., *State v Brady*, 122 Ariz App 236; 594 P2d 102 (1978); *Hale v State*, 246 Ark 989; 440 SW2d 550 (1969); *State v Forshee*, 611 P2d 1222 (Utah, 1980).

*United States v Valenzuela-Bernal,* 458 US 858, 873; 102 S Ct 3440; 73 L Ed 2d 1193 (1982). Accordingly, a defendant requesting the presence of an out-of-state witness pursuant to the Uniform Act must (1) designate the proposed witness' location with a reasonable degree of certainty; (2) file a timely petition; and (3) make out a prima facie case that the witness' testimony is material. *Williams, supra* at 201. On review, this Court will reverse a trial court's ruling only for an abuse of discretion. *Id.*[2]

The Uniform Act thus requires the presentation of enough facts to enable both the court in the demanding state and the court in the state to which the request is directed to determine whether the witness is material to the criminal proceeding.[3] MCL 767.92; MSA 28.1023(192). The quality and quantity of evidence necessary to establish a prima facie case of materiality will necessarily vary depending on the particular circumstances surrounding each case; however, we note that "prima facie evidence" is

> [e]vidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given

---

[2] In the present case, the trial court found that defendant fulfilled the first two requirements. However, the court determined that defendant failed to establish that his brother's proposed testimony was material, because it would serve merely to discredit the testimony of another witness. Because we find that defendant failed to present prima facie evidence of the content of his brother's proposed testimony, we do not reach the issue whether it was material. Nonetheless, because the circuit court reached the correct result, though for the wrong reasons, we affirm the judgment. *People v Brake,* 208 Mich App 233, 242, n 2; 527 NW2d 56 (1994).

[3] If the court in the demanding state issues a certificate that the proposed witness is material, a second hearing must then be held in the state whose cooperation is sought in compelling the witness' attendance. That court must determine anew whether the testimony sought is material. MCL 767.92; MSA 28.1023(192).

fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. [Black's Law Dictionary (6th ed), p 1190.]

Although Michigan authority regarding the Uniform Act is limited, this Court has held that unsupported statements that the witness is material or necessary are insufficient to establish a prima facie case of materiality. *Williams, supra* at 191-202. Courts from other states have suggested that the party seeking the presence of an out-of-state witness pursuant to the Uniform Act should present evidence in the form of an affidavit of the witness or other competent evidence.[4] See, e.g., *State v Moore*, 882 SW2d 253 (Mo App, 1994); *People v McCartney*, 38 NY2d 618; 381 NYS2d 855; 345 NE2d 326 (1976). We do not find it unfair to impose upon a defendant such a burden. The right to secure witnesses in one's favor must be balanced against the state's legitimate interest in the integrity of the adversary process and the fair and efficient administration of justice. *Taylor v Illinois*, 484 US 400, 414-415; 108 S Ct 646; 98 L Ed 2d 798 (1988).

Turning to the case before us, we note that defendant's proposed witness was his own brother, who had visited defendant in jail before traveling to and becoming incarcerated in Illinois. Defendant's counsel had not interviewed defendant's brother either personally or by telephone and thus did not personally verify the substance of his proposed testimony. In his

---

[4] An example of "other competent evidence" can be found in *People v Loyer*, 169 Mich App 105; 425 NW2d 714 (1988), in which the proposed witnesses' statements to police were admitted as exhibits during the hearing regarding the defendant's motion pursuant to the Uniform Act.

brief to this Court, defendant suggests that an appropriate remedy would be to remand this case for a hearing at which the substance of his brother's proposed testimony could be determined. We disagree. Defendant has already been afforded such a hearing, yet failed to present sufficient evidence to establish a prima facie case that his brother's proposed testimony was material.

C

A trial court must not exercise its discretion to deny a request under the Uniform Act in a manner inconsistent with the Sixth Amendment. As noted above, however, the right to compulsory process is not absolute. Consequently, a defendant's request under the Uniform Act must be carefully scrutinized both to protect the accused's right to compulsory process and to prevent useless or abusive issuance of process. On the record before us, we cannot find an abuse of discretion in the circuit court's failure to certify that defendant's brother was a material witness in defendant's case.

III

Defendant challenges the sufficiency of the evidence supporting his conviction of assault with intent to commit criminal sexual conduct involving penetration. MCL 750.520g(1); MSA 28.788(7)(1). Specifically, defendant argues that the prosecution presented insufficient evidence that defendant intended to sexually penetrate the complainant. We disagree.

When reviewing the sufficiency of evidence in a criminal case, this Court determines whether, viewed in a light most favorable to the prosecution, the evi-

dence is sufficient to permit a rational trier of fact to find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Herbert*, 444 Mich 466, 473; 511 NW2d 654 (1993). In the present case, the complainant testified that after defendant had touched her genitalia, he choked her and told her to take her pants all the way down. She also testified that, at one point, defendant "was fumbling with his hand down by his pants." This evidence, viewed in a light most favorable to the prosecution, is sufficient to permit a reasonable factfinder to conclude that defendant intended to sexually penetrate the complainant.

Defendant argues that the complainant's testimony was at times contradictory and that defendant's version of the relevant events was more reasonable. This argument must fail, because the determination of witness credibility is the function of the jury and not of the reviewing court. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

IV

Defendant next challenges the trial court's instructions to the jury. Specifically, defendant argues that the court's giving of a "no corroboration necessary" instruction violated his constitutional right to equal protection and that the court erred in refusing to give a jury instruction tendered by defendant. We review jury instructions in their entirety to determine if there is error requiring reversal. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). "Even if the instructions are imperfect, there is no error if they fairly

presented the issues to be tried and sufficiently protected the defendant's rights." *Id.*

A

Defendant first argues that the trial court violated his constitutional right to equal protection when it read CJI2d 20.25 to the jury. This instruction, which is included in the "Sex Crimes" chapter of the Michigan Criminal Jury Instructions (2d ed), provides:

> To prove this charge, it is not necessary that there be evidence other than the testimony of [name complainant], if that testimony proves guilt beyond a reasonable doubt.

Defendant insists that because this instruction is given only in cases involving charges of criminal sexual conduct, defendants in those cases are denied equal protection by exalting the complainants above other crime victims by instructing jurors that their testimony alone can justify conviction.

Both the federal Equal Protection Clause, US Const, Am XIV, § 1, and the state constitution, Const 1963, art 1, § 2 provide that no person shall be denied the equal protection of the laws. These provisions are coextensive. *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 305-306; 553 NW2d 377 (1996). Generally, a classification that neither burdens a fundamental right nor targets a suspect class will be upheld against an equal protection challenge "so long as it bears a rational relation to some legitimate end." *Romer v Evans*, 517 US ___, ___; 116 S Ct 1620, 1627; 134 L Ed 2d 855 (1996).

Defendant's argument must fail because his premise, that CJI2d 20.25 is given only in cases involving charges of criminal sexual conduct, is without factual

support. This Court is aware of no authority, nor has defendant cited any, establishing that this instruction cannot be given in cases involving other offenses. Moreover, it is well established that trial courts are not required to use the Michigan Criminal Jury Instructions, which do not have the official sanction of the Michigan Supreme Court. *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985).

Defendant has failed to demonstrate that the circuit court treated him less favorably than it would have treated a similarly situated defendant not charged with criminal sexual conduct. Accordingly, defendant has not established that the court's use of CJI2d 20.25 violated his right to equal protection under the laws.

B

Defendant also argues that the circuit court erred in denying his request to give the jury the following instruction:

> When there are two conflicting versions of what transpired and there is a reasonable doubt as to which is true, it is the duty of the jury to accept the version which is consistent with the innocence of the defendant.

We find no error in the circuit court's ruling. Where, as here, there is direct evidence supporting a conviction, such an instruction need not be given. *People v Moore*, 176 Mich App 555, 556-557; 440 NW2d 67 (1989). Further, the trial court fully instructed the jurors regarding defendant's presumption of innocence, the prosecution's burden to establish guilt beyond a reasonable doubt, and appropriate factors to consider in evaluating witness credibility. Because the charge to the jury adequately safeguarded defend-

ant's rights, the circuit court's refusal of the tendered jury instruction was not error. *People v Larco*, 331 Mich 420, 431; 49 NW2d 358 (1951).

V

Defendant argues that his sentence of thirteen to twenty years violates the doctrine of proportionality. We disagree.

The sentencing guidelines do not apply to habitual offenders like defendant, and it is inappropriate to use them when reviewing defendant's sentence. *People v Cervantes*, 448 Mich 620, 625 (RILEY, J), 630 (CAVANAGH, J.); 532 NW2d 831 (1995). Nonetheless, the principle of proportionality announced in *People v Milbourn*, 435 Mich 630, 635-636; 461 NW2d 1 (1990), applies.

The maximum sentence for assault with intent to commit criminal sexual conduct involving sexual penetration is ten years. MCL 750.520g(1); MSA 28.788(7)(1). Because defendant was a third-offense habitual offender, however, the trial court could impose a maximum sentence of twice this long, or twenty years. MCL 769.11(1)(a); MSA 28.1083(1)(a). Defendant's minimum sentence of thirteen years is also near the maximum permitted. See *People v Thomas*, 447 Mich 390, 392, n 5; 523 NW2d 215 (1994) (minimum sentence for an habitual offender may not exceed two-thirds of the maximum sentence). Defendant thus received nearly the highest possible maximum sentence for this offense.

In *Milbourn, supra* at 651, our Supreme Court stated:

> [W]e believe it reasonable to conclude that the Legislature, in setting a range of allowable punishments for a sin-

gle felony, intended persons whose conduct is more harmful and who have more serious prior criminal records to receive greater punishment than those whose criminal behavior and prior record are less threatening to society.

We have reviewed carefully the record in this case and conclude that in light of the compelling aggravating factors of defendant's past criminal record, which includes prior sexually oriented offenses, and the seriousness of the instant offense, in which defendant choked the complainant and threatened to kill her, defendant's thirteen- to twenty-year sentence does not violate the doctrine of proportionality.

Affirmed.