# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MIGUEL ANGEL BAEZ,

       Defendant-Appellant.

UNPUBLISHED
March 12, 2015

No. 319251
Wayne Circuit Court
LC No. 13-006691-FC

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit great bodily harm less than murder, MCL 750.84(1)(a), felon in possession of a firearm, MCL 750.224f, and assault with a dangerous weapon (felonious assault), MCL 750.82(1).[1] The trial court sentenced defendant, as a third habitual offender, MCL 769.11(1), to 90 to 180 months' imprisonment for the assault with intent to commit great bodily harm conviction, 1 to 10 years' imprisonment for the felon in possession of a firearm conviction, and 1 to 8 years' imprisonment for the felonious assault conviction. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND.

This appeal arises from a shooting that occurred on July 6, 2013, at 1160 Livernois in Detroit. Marcus Tabb and Danny Driver were sitting on the porch of an apartment building located at the Livernois address when Marcus's cousin, Larodrick Tabb, drove by in a Ford Escape with defendant seated on the passenger's side. Initially, Larodrick's sister, Shajuana James, followed behind the Escape in a second car with her daughter Shantia James. Larodrick and Shajuana argued with Marcus and Driver from inside their respective cars accusing Marcus and Driver of stealing copper pipe from their former home. Both vehicles eventually drove away, but the Escape drove past the apartment building two more times. When the Escape

---

[1] The convictions for assault with intent to commit great bodily harm less than murder and felonious assault applied to Danny Driver. Defendant was also charged with, but acquitted of, assault with intent to murder Driver, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

pulled in front of the apartment building a third time, Marcus challenged Larodrick to a fight. Defendant then got out of the Escape, walked around the rear of the car and started shooting at Marcus and Driver. He shot Driver in the left ankle. Police obtained statements from witnesses, some of whom knew defendant for several years, one being Cleshay Martin. Two witnesses provided police with defendant's name, and Martin showed police defendant's picture on Facebook.

Prior to trial, defendant filed a notice of alibi informing the prosecution that defendant planned to call Shajuana and Shantia to testify that defendant was helping them move furniture around 12:45 p.m. on the date of the shooting. During opening statements, defense counsel told the jury that defendant did not commit the crime because he was not there. Counsel then informed the jury that she had filed an alibi defense.

Defense counsel represented that alibi witnesses Shajuana and Shantia were present on the first day of trial. Martin testified that she had seen the two women involved in the initial argument over copper pipe present in court that day. Between the first and second days of trial, Shajuana called defense counsel and reported that Detroit Police Sergeant Todd Eby asked her and Shantia to leave the building following an argument with the prosecution's witnesses. However, defense counsel was unsuccessful in calling Shajuana back and asking her to return to court. Upon learning of the issue on the second day of trial, the trial court asked the police to send a note to the witnesses' home:

> [*Defense Counsel*]: Judge, yesterday, apparently, something erupted in the hall between my two witnesses and the victims, victim and other, their witnesses. My witnesses were asked to leave the building and never come back[2]. I tried to call them this morning—
>
> *The Court*: (Interposing) [w]ho told them never to come back?
>
> [*Defense Counsel*]: I don't know. It was an officer.
>
> [*Prosecution*]: I was told by Sergeant Eby that they were out in the hallway and the witnesses on her case were trying to intimidate the witnesses on my case and there was a big argument. And they told them to leave. And they left. Then they tried to come back upstairs. And so, they walked them out of the building to the parking structure….

* * *

---

[2] Defendant contends that Eby told both witnesses to leave and never to return to the courthouse. There is no direct testimony that Eby told the witnesses never to return to the courthouse. The only record evidence of what Eby actually told the witnesses is the hearsay statement of Shajuana offered by defense counsel to the trial court.

*The Court*: But Eby cannot tell people not to come in the building. He really can't tell people to leave. His job is to come get court personnel because he doesn't have jurisdiction to direct people to do anything. He's acting outside of his authority. The authority for security is vested in the Wayne County Sheriffs and, specifically, kind of room-by-room.

So, if you will let Mr. Eby know, on the streets, his word is whatever his word is. But if he has any difficulty, his course of action is to come and let one of the courtroom deputies handle the security....

[*Defense Counsel*]: My point is I don't have any witnesses.

*The Court*: Well, one thing about it is you've got a number you can call them and you can tell them to come down.

[*Defense Counsel*]: I can't call them. I couldn't get through at all. I mean, there phone was—[i]t wasn't disconnected—

*The Court*: (Interposing) [o]kay. But still, this man said he didn't tell anybody to leave.

[*Defense Counsel*]: They were, they were—

*The Court*: (Interposing) [o]kay. Who told you, who told you—

[*Defense Counsel*]: (Interposing) [j]udge, I don't—

*The Court*: (Interposing) [t]hat they were told not to come back?

[*Defense Counsel*]: I received a phone call from, I think it was one of the witnesses—

*The Court*: (Interposing) [o]kay. Who, Ms. Erwin?

[*Defense Counsel*]: Shajuana James.

*The Court*: Okay. So, you got called—

[*Defense Counsel*]: (Interposing) [s]aid that she was asked to leave and, her daughter and they left [sic].

*The Court*: So, she used a phone and she didn't, and how you can't get back to her?

[*Defense Counsel*]: I can't. No. I tried to rectify it this morning to make sure they were going to be back, but—

*The Court*: (Interposing) [b]y doing what?

[*Defense Counsel*]:  Calling them.

The *Court*:  Okay.  Well, then we'll send the police by 4204 Central over on the [w]est side, leave a little—[y]ou make them a note….

The record is silent concerning whether the note ordered by the trial court was delivered or received.  It is undisputed however, that Shajuana and Shantia failed to appear on the third day of trial.  Rather than ask for a continuance or further assistance in securing the witnesses, defendant rested:

The *Court*:  This is People of the state of Michigan versus Mr. Baez.  Okay, Ms. Erwin, have you got your witnesses?

[*Defense Counsel*]:  No.

The *Court*:  Okay.  So, what are you going to do?

\* \* \*

[*Defense Counsel*]:  (Interposing) Judge, you know, I tried to get them last night and I've had no contact with them.

*Defendant*:  They're not here?

[*Defense Counsel*]:  No.

The *Court*:  Okay.  So, my question is:  What are you going to do?

[*Defense Counsel*]:  Well, I guess I'm going to rest.  I don't have any choice.

Defendant was convicted and sentenced as stated above.  This appeal then ensued.

## II.  ANALYSIS.

On appeal, defendant argues that Eby's conduct in ordering Shajuana and Shantia to leave violated his right to compulsory process and also violated his right to present a defense.  As a result, defendant argues that he is entitled to a remand for an evidentiary hearing "to establish that his defense was sufficiently prejudiced by [the absence of his alibi witnesses] to require a new trial."

Defendant failed to assert any objection regarding his right to compulsory process or to present a defense in the trial court, leaving this issue unpreserved.  *People v Moorer*, 262 Mich App 64, 67-68; 683 NW2d 736 (2004).  Unpreserved constitutional claims are reviewed for plain error.  *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).  Failure to assert a constitutional right ordinarily constitutes a forfeiture of that right.  *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012).  "In analyzing a forfeited claim of error, a defendant is not entitled to relief unless he can establish (1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction

-4-

of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*., citing *Carines*, 460 Mich at 763.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to compulsory process to obtain witnesses in his defense. US Const, Am VI. The Michigan Constitution guarantees the same right. Const 1963, art 1, § 20. "The right to offer the testimony of a witness, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). Though the right to compulsory process is fundamental, it is not absolute. *People v McFall*, 224 Mich App 403, 408; 569 NW2d 828 (1997). It requires a showing that the absent witnesses' testimony would be both material and favorable to the defense. *Id*. Unsupported claims that the witness is material or necessary are insufficient to establish materiality. *Id*. at 410.

It is clear that defendant's alibi witnesses Shajuana and Shantia were present on the first day of trial. They reportedly engaged in an argument with the prosecution's witnesses in the hallway and, as a result, Eby asked them to leave the building. Between the first and second days of trial, Shajuana called defense counsel and reported the incident. However, defense counsel was unsuccessful in calling Shajuana back and asking her to return to court. Upon learning of the issue on the second day of trial, the trial court asked the police to send a note to the witnesses' home. Rather than ask for a continuance or further assistance in securing the witnesses, defendant rested. On these facts, defendant has not demonstrated a violation of his right to compulsory process. As an initial matter, defendant does not argue that the trial court's efforts to recall Shajuana and Shantia by sending the note were insufficient. Instead, defendant suggests that the note "did not get to [the alibi witnesses] in time to have them reappear." The record reveals that the trial court ordered the note immediately after learning that Shajuana and Shantia had been improperly dismissed from the building. Defendant does not explain how the trial court could have acted earlier or how else it should have reached out to the witnesses, particularly given the fact that Shajuana was not returning defense counsel's repeated telephone calls.

When Shajuana and Shantia did not appear to testify on the third day of trial, defendant did not ask for a continuance to locate the alibi witnesses or seek any other assistance from the trial court to compel their presence. In essence, defendant did not invoke his right of compulsory process. The trial court was not required to offer defendant such assistance sua sponte. See, e.g., *People v Elston*, 462 Mich 751, 764; 614 NW2d 595 (2000) ("The longstanding rule of this state is that, in the absence of a request for a continuance, a trial court should assume that a party does not desire a continuance.") Because defendant never requested a continuance or any other assistance in producing his alibi witnesses, no error occurred.

Defendant's compulsory process claim also fails because he has not established that the missing witnesses' testimony would be material and favorable to his defense. *McFall*, 403 Mich App at 408. He offers no affidavit or other form of proof summarizing Shajuana's and Shantia's anticipated testimony. Absent such proof, defendant cannot demonstrate plain error, and is not entitled to his request that this Court remand for an evidentiary hearing. See MCR 7.211(C)(1)(a)(ii) ("A motion [to remand] under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at the hearing.")

Our review of the record evidence leads us to conclude that even assuming Shajuana and Shantia testified consistent with the notice of alibi, the jury still could have found defendant guilty beyond a reasonable doubt. The notice of alibi does not account for defendant's whereabouts at the time of the shooting. The notice states that defendant was helping Shajuana and Shantia move furniture from Livernois to Central Street at 12:45 p.m. on the day of the shooting. Witness testimony established that Larodrick first stopped at the apartment building on Livernois between 10:00 a.m. and 10:30 a.m. and that the shooting occurred approximately 30 minutes later, around 11:00 a.m. Hence, even had they testified in accordance with defendant's notice of alibi, said alibi did not cover the time of the shooting. Given the evidence presented, and assuming that both witnesses testified in strict accordance with the notice of alibi, defendant could still have been found guilty beyond a reasonable doubt. The testimony of Marcus, Driver, and four other witnesses clearly put defendant at the scene prior to 12:45 p.m. and clearly identified defendant as the shooter. It is therefore likely that even if the witnesses would have testified according to the notice of alibi, the jury could have found beyond a reasonable doubt that defendant committed the crime and then went to help Shajuana and Shantia move furniture approximately an hour and a half later. Accordingly, on this record, we cannot conclude that defendant has suffered any prejudice due to the nonappearance of his alibi witnesses.

Affirmed.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello