# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

THOMAS JAMES MOLTANE,

       Defendant-Appellant.

UNPUBLISHED
March 10, 2016

No. 325165
Bay Circuit Court
LC No. 13-010248-FH

Before: SERVITTO, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant, Thomas James Moltane, was convicted by a jury of larceny by conversion of more than $20,000, MCL 750.362, and tax fraud, MCL 205.56, and sentenced to concurrent 300-day jail terms for each conviction. He appeals as of right.[1] We affirm.

## I. BACKGROUND

At all times pertinent to this case, defendant owned and operated Wright Gregory Memorial Service, a headstone design and engraving business. From late 2011 until late 2012, defendant contracted with numerous customers to provide various monument, headstone, and engraving services. Pertinent to this appeal, defendant was paid, whether it be in the form of a down payment, monthly installments, or payments in full, between $500 and nearly $3,200 by at least 23 different customers.[2] The sum of the payments collected from those 23 customers was, at least, in excess of $20,000. On each occasion, defendant accepted payment and ensured the customer that he would complete the project within a relatively short period of time, with the usual estimation being a handful of weeks or months. As it relates to all 23 customers, suffice it to say he did not meet his time estimations. All 23 customers testified that after failing to hear from defendant regarding their project, they would unsuccessfully attempt to contact him via

---

[1] On appeal, defendant challenges his larceny conviction only. He does not challenge his tax fraud conviction. Thus, the factual basis for his tax fraud conviction will not be discussed in this opinion.

[2] The record also includes testimony of two additional customers, one from 2001 and one from 2013.

-1-

telephone, via mail, or in person for several months. If defendant responded, which the record reflects was rare, he would often provide a variety of reasons to justify his failure to timely complete each project, citing problems with his truck, shipping delays, financial difficulties and the economy in general, a lack of work equipment, and, most pertinent to this appeal, his health.

In May 2013, a local newspaper published an article outlining defendant's business and the problems associated with it. Law enforcement began an investigation into defendant and his business, and, generally speaking, defendant cited the same reasons to justify his failure to timely complete each project to law enforcement as he did to his customers. Primarily, defendant claimed that his medical condition prevented him from completing the projects at issue. Defendant was eventually charged with the offenses described above. At trial, his position remained the same. He presented the testimony of his treating physician, who indicated that defendant first visited his clinic in November 2012 and, over the next one-and-a-half years, presented a variety of medical conditions. Based on this evidence, a jury found defendant guilty as charged. This appeal followed.

## II. ANALYSIS

Defendant raises two distinct issues on appeal. First, defendant argues that the trial court erroneously instructed the jury on the elements of larceny by conversion. Second, defendant argues that there was insufficient evidence to support his conviction of larceny by conversion. We disagree in both respects.

## A. JURY INSTRUCTION

Defendant raises two unique arguments relating to the manner in which the trial court instructed the jury on the elements of larceny by conversion. First, he argues that the trial court erroneously instructed the jury, in response to a question, that the illustrative examples provided by the trial court applied to each, not just the fifth, element of larceny by conversion. Because this argument was raised before and decided by the trial court, it is preserved for appellate review. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Preserved claims of instructional error are reviewed de novo. *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003). He also argues that the trial court erroneously instructed the jury that the position of "contractor" was included in the definition of "relationship of trust." Because this argument was not raised before and decided by the trial court, it is unpreserved for appellate review. *Sabin*, 242 Mich App at 657. Unpreserved claims of instructional error are reviewed for plain error affecting substantial rights. *People v Rodriguez*, 251 Mich App 10, 24; 650 NW2d 96 (2002). Reversal is warranted only if the plain error resulted in the conviction of an actually innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

A criminal defendant has the right to have a properly instructed jury consider the evidence against him. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). A trial court must instruct the jury regarding the applicable law and fairly and fully present the case to the jury in an understandable manner. *Id*. at 80. Jury instructions must include all elements of the charged crimes and must not exclude material issues, defenses, or theories that are supported by the evidence. *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). When a

jury instruction error is alleged, the jury instructions are reviewed in their entirety. *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). No error will be found where the jury instructions fairly and fully present the issues to be tried and sufficiently protect the defendant's rights. *Id*. at 412-413.

Addressing the first argument, defendant takes issue with the trial court's response to a question presented by the jury during deliberations. Consistent with the elements of larceny by conversion, the trial court initially instructed the jury as follows:

> [T]he prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the property was voluntarily transferred to the defendant. It does not matter whether the property was transferred legally.
>
> Second, that the property had a fair market value at the time it was transferred, of $20,000 or more.
>
> Third, that the defendant either hid the property or wrongfully deprived the owner of the possession of it. Wrongfully depriving means using or keeping someone else's property without that person's permission.
>
> Fourth, that at the time the property was converted, the defendant intended to defraud or cheat the owner out of the property permanently.
>
> Fifth, that the act was done without the owner's consent.

Next, the trial court elaborated on these elements by explaining as follows:

> If the property was given to the defendant because the owner had a relationship of trust with the defendant, and the owner had no intention of actually giving the defendant ownership of the property, and the defendant then took the property in a way that the owner did not intend, that may be considered as taking the property without the owner's consent. A relationship of trust means any relationship that exists because of the defendant's position as a contractor.
>
> If you find that the defendant got the property by using some trick or pretense, you may consider whether the owner would have consented to the defendant taking the property if the owner had known the true nature of the act or transaction involved.
>
> When I say someone must act with the intent to defraud or cheat, I mean act to cheat or deceive usually to get money, property, or something else valuable, or to make someone else suffer such a loss.

These illustrative explanations, with the exception of the word "contractor," which is discussed below, are consistent with M Crim JI 23.10(8) and (9).

During deliberations, the jury asked whether "numbers six and seven," i.e., the two illustrative examples involving consent, were elements that needed to be proven or explanations.[3] While both parties agreed that they were explanations, defendant additionally requested that the jury be instructed that they could only be used when considering the fifth element. The trial court disagreed and instructed the jury that the illustrative examples were "an explanation of the type of things you may consider in determining whether the elements one through five of the instructions . . . have been proved beyond a reasonable doubt." On appeal, defendant, relying entirely on the model jury instructions, contends that he is entitled to a new trial because the jury was instructed to consider the illustrative examples in determining whether each, not just the fifth, element was proved by the prosecution. We disagree.

This Court will not find error requiring reversal for a claim of instructional error unless the alleged error "resulted in a miscarriage of justice," which "occurs when an erroneous or omitted instruction pertained to a basic and controlling issue in the case." *People v Bartlett*, 231 Mich App 139, 144; 585 NW2d 341 (1998). Here, while the trial court's instruction did permit the jury to consider the illustrative examples for each element, it is apparent from the language of the examples that they apply only to the fifth element. Both examples expressly and unequivocally provide explanations of scenarios where an individual takes the property from the owner without the owner's *consent*. While the trial court did not expressly limit their application, it is unclear, and defendant does not explain, how those examples could possibly be used to prejudicially impact the remaining four elements. Thus, while the instruction in response to the jury's question may have been imperfect, we conclude that the instruction at issue fairly presented the issues to be tried and sufficiently protected the defendant's rights. *McFall*, 224 Mich App at 412-413.

Addressing defendant's second argument relating to the trial court's use of the word "contractor," we conclude that any error was waived by defendant during trial. Defendant expressly denied having any objections to the jury instructions, which included this instruction. Thus, his explicit approval waived any objection as well as appellate review. *People v Kowalski*, 489 Mich 488, 503-505; 803 NW2d 200 (2011). Furthermore, in briefly addressing the argument, we discern no error. A contracting party who receives payment for services with the customer's understanding that services will be provided in return is in a relationship of trust with the customer. *People v Mason*, 247 Mich App 64, 74-75; 634 NW2d 382 (2001). While, perhaps, the word "bailee" may have been more consistent with the model jury instructions, the semantic distinction between contractor and bailee is, at best, trivial. See, e.g., Black's Law Dictionary (9th ed. 2009) (defining bailee as "[a] person who receives personal property from another, and has possession of but not title to the property."). Thus, this instruction fairly

---

[3] The written instructions provided to the jury were the same as those read to the jury and quoted above. The illustrative examples involving consent were numbered "(6)" and "(7)" and appear immediately after the five elements listed, which were numbered "(1)," "(2)," "(3)," "(4)," and "(5)." The third illustrative example, relating to the intent to defraud or cheat, is included, and, while located immediately after the elements and two consent-related illustrative examples, it was under a separate bold-faced heading.

presented the issues to be tried and sufficiently protected the defendant's rights as well. *McFall*, 224 Mich App at 412-413.

To the extent defendant also argues that the first consent-related illustrative example should not have been included at all, we deem that argument abandoned. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Furthermore, even if we assume that the inclusion of this example was improper, we conclude that any error does not require reversal. *McFall*, 224 Mich App at 412-413.

## B. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant also argues that there was insufficient evidence to support his larceny conviction. Specifically, defendant contends that "no reasonable trier of fact could have found that Mr. Moltane intended to cheat his customers out of money beyond a reasonable doubt." We disagree.

A defendant's challenge to the sufficiency of the evidence is reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires that every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979). To determine whether the prosecution has presented sufficient evidence to sustain a conviction, an appellate court is required to, reviewing the evidence in a light most favorable to the prosecution, ascertain whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn therefrom, when viewed in a light most favorable to the prosecution, are considered when determining whether the prosecution proved a defendant's guilt beyond a reasonable doubt. *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). Intent can be inferred from a person's actions. *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997). Further, because it is difficult to prove a defendant's state of mind, *minimal circumstantial evidence is sufficient*. *Ericksen*, 288 Mich App at 197; see also *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999).

Defendant was convicted of larceny by conversion over $20,000, MCL 750.362, which occurs "where a person obtains possession of another's property with lawful intent, but subsequently converts the other's property to his own use." *Mason*, 247 Mich App at 72 (internal quotation marks omitted). In order to convict a defendant of larceny by conversion, (1) the property at issue must have some value; (2) the property must have belonged to someone other than the defendant; (3) someone must have delivered the property to the defendant; (4) the defendant must have embezzled, converted, or hid the property with an intent to embezzle or fraudulently use; and (5) the defendant must have intended to defraud or cheat the owner permanently of the property at the time the property was embezzled, converted, or hidden. *Id*.

On appeal, defendant argues that the fifth element is lacking. He points to evidence demonstrating that he continued to work on or completed some of the projects described above as well as the testimony by his physician regarding his medical difficulties between November 2012 and March 2014. In essence, he contends that, had he truly intended to cheat or defraud his customers, he would have never made attempts to complete the projects after receiving payment.

-5-

Ultimately, defendant claims, "he is simply a poor business man who got too sick to manage his business." In essence, defendant asks this Court to review the evidence in a light most favorable to him, keeping in mind his medical condition and lack of business skills, but that is precisely what we are prohibited from doing. Instead, we must view the evidence in a light most favorable to the prosecution. *Tennyson*, 487 Mich at 735; *Hardiman*, 466 Mich at 421. Doing so, we conclude that a rational trier of fact could have found defendant guilty beyond a reasonable doubt.

The evidence presented at trial indicated that defendant accepted various payments ranging from $500 to nearly $3200 in exchange for services to be completed within a specific period of time. While he accepted the payments and used the money, he did not perform or complete the corresponding services within that time period. In fact, the evidence presented by the prosecution indicated that defendant has yet to work on eight of the 23 projects that he was paid to complete. While he apparently made some sort of progress on the remaining 15, it is important to keep in mind the fact that this progress largely took place after a newspaper article publicizing the plight of his customers was published as well as after the investigation underlying this case began. In fact, multiple witnesses testified that defendant either attempted to work on their project or refund part of or all of their payments during the week before defendant's trial. Additionally, twelve of the 23 projects were contracted for prior to August 2012 and were to be completed before November 2012, the time when defendant's medical concerns arose. The record is void of any evidence regarding defendant's efforts on those projects during that time period when he was healthy. In fact, it appears that all of the 23 projects at issue were contracted for prior to or during November 2012, the time when defendant first sought medical treatment for the condition that allegedly prevented him from working on or completing these projects. In fact, at least one customer made additional payments to defendant in the summer of 2013, months after defendant's medical concerns that allegedly prevented him from working arose. Further, nearly all of the customers made numerous unsuccessful attempts to inquire as to why the services that they had paid for were not being performed, often finding his business closed or the phone disconnected. The jury, who, unlike this Court, had the opportunity to view the witnesses testify, concluded that the prosecution proved defendant's intent beyond a reasonable doubt. "This Court will not interfere with the trier of fact's role in determining the weight of the evidence or credibility of witnesses," *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), and that is precisely what defendant is asking us to do in this case.

The mere fact that defendant, eventually, attempted to make some progress on these projects does not render the evidence presented by the prosecution insufficient as he suggests. Indeed, in a similar context, we explained that the "intent to permanently deprive" is not literal. *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010), citing *People v Jones*, 98 Mich App 421, 425-426; 296 NW2d 268 (1980). "Rather, the intent to permanently deprive includes the retention of property without the purpose to return it within a reasonable time . . . ." *Id*. Furthermore, as we have stated before, the mere return of property does not absolve a defendant of the criminal consequences of his or her acts because the crime of larceny is complete once the taking is accomplished. *People v Chappelle*, 114 Mich App 364, 369; 319 NW2d 584 (1982), overruled in part on other grounds *People v Bearss*, 463 Mich 623; 625 NW2d 10 (2001). Thus, viewing the evidence in a light most favorable to the prosecution, *Tennyson*, 487 Mich at 735; *Hardiman*, 466 Mich at 429, we conclude that the prosecution

presented sufficient evidence to support defendant's larceny conviction. *Ericksen*, 288 Mich App at 197; *McRunels*, 237 Mich App at 181.

## III. CONCLUSION

Accordingly, we conclude that defendant is not entitled to a new trial based on the alleged instructional errors. We also conclude that there was sufficient evidence to support defendant's convictions. We therefore affirm his conviction and sentence.

Affirmed.

/s/ Deborah A. Servitto
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien