*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KAINE DANIEL HARDENBURGH,

        Defendant-Appellant.

UNPUBLISHED
June 11, 2025
2:16 PM

No. 364932
Grand Traverse Circuit Court
LC No. 2022-014208-FH

Before: MARIANI, P.J., and MALDONADO and YOUNG JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of first-degree home invasion, MCL 750.110a(2). We affirm.

## I. BACKGROUND

In July 2022, defendant entered a house that he owned and went into a bedroom, where his ex-girlfriend at the time was asleep in bed with a man she was then dating ("the victim"). Defendant and his ex-girlfriend were the parents of young twins, and they all had formerly lived in the house together. At all times relevant to this case, however, defendant was not permitted to be within 500 feet of the house due to an existing bond order stemming from a domestic violence case between defendant and the ex-girlfriend. The ex-girlfriend was not subject to any such limitation and continued to live in the house.

Testimony at trial established that defendant had previously ejected the victim from the house while breaking up a party involving underage drinking, and according to defendant's theory of the case, he believed he had to enter the house on the day in question in order to protect his children from the victim. When defendant entered the bedroom, the ex-girlfriend and the victim awoke. Defendant climbed onto the bed and struck the victim several times, and then both men left the house. Evidence and testimony at trial indicated that the ex-girlfriend then met defendant later that day in a parking lot to retrieve the children for visitation. When defendant was later interviewed by police, he acknowledged speaking with his ex-girlfriend over the phone on the day of the incident in question but repeatedly denied having any other contact with her that day. Recorded portions of this conversation were played for the jury. Defendant did not testify at trial.

-1-

The jury found defendant guilty of first-degree home invasion.  This appeal followed.

## II.  JURY INSTRUCTIONS

Defendant first argues that the trial court erred by improperly modifying the jury instructions regarding the elements of first-degree home invasion and by failing to properly instruct the jury on certain common-law defenses.  We disagree.

"Claims of instructional error are reviewed de novo."  *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003).  A defendant has the right to "a properly instructed jury."  *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995).  This means that the trial court "is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner."  *Id.*  Furthermore, when a defendant requests an instruction on a theory or defense that has evidentiary support, generally the trial court is required to provide it.  *Id.* at 81; see *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003) (explaining that "[j]ury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence").

Nevertheless, jury instructions are reviewed "in their entirety to determine if there is error requiring reversal."  *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997).  There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights."  *Milton*, 257 Mich App at 475.  Moreover, "[t]rial judges should not hesitate to modify or disregard the [criminal jury instructions] when presented with a clearer or more accurate instruction."  *People v Richardson*, 490 Mich 115, 120; 803 NW2d 302 (2011) (alterations in original).

## A.  PERMISSION

As noted, defendant was convicted of first-degree home invasion under MCL 750.110a(2).  As is relevant here, the first element of that offense requires that the defendant either: (1) break and enter a dwelling or (2) enter a dwelling without permission.  MCL 750.110a(2); see *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).  The phrase "without permission" is defined as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling."  MCL 750.110a(1)(c).

In this case, the trial court, at the prosecution's request, revised the definition of "without permission" to omit the phrase "from the owner or lessee of the dwelling," instructing the jury that "[w]ithout permission means without having obtained permission to enter from any person lawfully in possession or control of the dwelling."  According to defendant, this improperly presented the elements of first-degree home invasion to the jury; as the omitted language makes clear, permission can be obtained from the owner of the property, which in turn means that defendant, as owner of the house, could grant himself permission to enter, rendering him not guilty of the charged offense.  Settled caselaw, however, belies this argument.  As this Court has explained, an individual may commit a home invasion of his or her own dwelling if the individual has lost the legal right to enter the dwelling, such as through a court order.  See *People v Dunigan*, 299 Mich App 579, 583; 831 NW2d 243 (2013) (observing that "it is possible to 'break and enter' one's own home if one has lost the legal right to be present in that home, for example, by operation

-2-

of a court order"); *People v Pohl*, 202 Mich App 203, 205; 507 NW2d 819 (1993) (recognizing that "there is no right to enter into one's home, in violation of a restraining order"); *People v Szpara*, 196 Mich App 270, 273-274; 492 NW2d 804 (1992) (rejecting the "defendant's argument that he could not be charged with breaking and entering his own home" because "[h]e was prevented by court order from entering the marital home" and thus "had lost, at least at the time of this incident, whatever rights he had to enter the home").

There is no dispute that, at the time of the incident at issue, defendant was prohibited—by court order—from entering the house. Accordingly, as the trial court correctly concluded, defendant was not entitled to a jury instruction on "permission . . . from the owner" because he did not have a legal right to be present in the house and could not, therefore, grant himself permission to enter. The modified instruction provided by the court thus fairly presented the issue to be tried in this case in a manner that was clearer and more accurate than the unmodified version, and that was sufficiently protective of defendant's rights. *Richardson*, 490 Mich at 120; *McFall*, 224 Mich App at 412-413.

Defendant maintains that, by omitting the "owner's permission" language from the instruction, the jury was improperly left to consider whether defendant committed first-degree home invasion by reference to an instruction appropriate for third-degree home invasion. The same statutory definition of "without permission," however, applies to both first- and third-degree home invasions. And while defendant stresses that third-degree home invasion expressly contemplates a circumstance where an individual enters a dwelling in violation of court order, see MCL 750.110a(4)(b), that does not mean—nor does any authority suggest—that such a circumstance could not also result in first-degree home invasion (if accompanied, as it was here, by conduct sufficient to satisfy the other elements of that offense). Defendant has failed to show instructional error on this basis.

## B. EJECTMENT

Defendant makes a related claim that the trial court erred by failing to give a complete instruction regarding defense of property by ejectment of a trespasser. Under common law, a person "may use such force as is necessary for the protection of his property." *People v Shaffran*, 243 Mich 527, 528-529; 220 NW 716 (1928) (quotation marks and citation omitted). To that end, defendant argued at trial that the victim was a trespasser whom he was lawfully ejecting from his property, and requested the following jury instruction:

> The defendant says he is not guilty because of his common law right to evict trespassers. The defendant is not guilty if you find that defendant was exercising his right to evict a trespasser. The prosecutor must prove beyond a reasonable doubt that the defendant was not evicting a trespasser.

In response, the prosecution requested an alternative jury instruction that would be "curative" as to defendant's "lawful ejectment" arguments, which were contrary to the undisputed facts that defendant had no legal right to enter the property due to his court-ordered bond conditions and also had no reason to think the victim was trespassing. The trial court agreed that the defense of ejecting a trespasser was not applicable and issued the following instruction to the jury:

The defendant has claimed in his opening statement and closing argument that [the victim] was a trespasser and that the defendant was ejecting him from the house. Owners of homes have a right under certain circumstances to force people to leave their homes; however, due to the existing conditions defendant did not have legal authority to eject a trespasser.

We see no error in the trial court's handling of this matter. As discussed, there is no dispute that, at the time of the conduct at issue, defendant was subject to court-ordered bond conditions that prohibited him from entering the property. Because defendant was not legally entitled to physical presence or control of the house at the relevant time, the trial court correctly concluded that the evidence did not support a theory of defense of property by ejectment of a trespasser and that the jury should be instructed accordingly. See *McFall*, 224 Mich App at 412-413.

## C. DEFENSE OF OTHERS

For his final claim of instructional error, defendant argues that the trial court erred by not instructing the jury on a person's right to come to the defense of others. "Under the defense-of-others doctrine, one may use force in defense of another when he or she reasonably believes the other is in immediate danger of harm and force is necessary to prevent the harm[.]" *People v Leffew*, 508 Mich 625, 638; 975 NW2d 896 (2022) (cleaned up).

According to defendant, an instruction on this defense was warranted because, when he entered the house, he was under the impression that his young twins were in the housee with the victim and that his ex-girlfriend was not present. There was no evidence, however, to support the notion that the children were in the house at that time or that it would have been reasonable for defendant to believe so. To the contrary, the evidence presented at trial indicated that the ex-girlfriend was scheduled to *retrieve the children from defendant* later that day. Furthermore, even if defendant did reasonably believe the children were present in the house at that time, there was no evidence to suggest a reasonable belief that they were, at that time, "in immediate danger of harm and force is necessary to prevent that harm." *Id.* Defendant points to the fact that, a month prior, the victim and the ex-girlfriend had a gathering at the house while the children were present that involved underage drinking, but he wholly fails to connect that prior incident to any reasonable belief, when he engaged in the conduct at issue, of immediate danger to the children that required his use of force. We see no error in the trial court's conclusion that the evidence did not support a defense-of-others instruction.

## III. FALSE STATEMENTS

Defendant next contends that the trial court erred by allowing into evidence certain false statements that he made to police. We disagree.

This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

-4-

As noted above, portions of police bodycam footage, which captured a phone conversation between defendant and a detective, were played for the jury at trial. In the recording, defendant made multiple denials about contact with his ex-girlfriend on the day of the incident. Defendant argues that evidence that he lied to law enforcement should have been excluded because it was irrelevant and was inadmissible as impeachment evidence.

"Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). See also MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *Aldrich*, 246 Mich App at 114. Evidence need not necessarily relate to an element of the charged crime or an applicable defense to be material. *People v Brooks*, 453 Mich 511, 518; 557 NW2d 106 (1996).

Broadly speaking, evidence that a defendant lied to law enforcement may be relevant to show the defendant's consciousness of guilt. "A jury may infer consciousness of guilt from evidence of lying or deception." *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008). See also, e.g., *People v Kowalski*, 489 Mich 488, 509; 803 NW2d 200 (2011) (observing that the defendant's attempts to conceal his involvement in the charged crime were probative of his consciousness of guilt). Defendant concedes that lying to an investigating officer may be probative of consciousness of guilt, but argues that the prosecution in this case did not use the evidence at issue for that purpose, never having argued to the jury that defendant's lies showed a consciousness of guilt. The record, however, belies this argument. While the prosecution may not have used the precise phrase "consciousness of guilt," it is clear that the prosecution, in arguing to the jury about defendant's "mindset and interest" in trying to conceal his involvement in the events at issue, was offering the evidence to demonstrate defendant's consciousness of guilt.

Defendant also argues that his false statements could not have been properly admitted for impeachment because he did not testify. The prosecution, however, did not attempt to use the evidence for impeachment and the trial court did not mention impeachment in its reasoning for admitting the evidence. Instead, as discussed, the evidence was offered and properly admitted to show defendant's consciousness of guilt. Defendant has failed to show error in its admission.

## IV. ADJOURNMENT

Lastly, defendant argues that the trial court erred by denying his request for an adjournment. Specifically, defendant sought to adjourn trial in this case until after the scheduled trial in a separate case that was pending against him in district court—namely, the case whose prior proceedings had resulted in the imposition of the bond conditions prohibiting his presence at the house. The trial court concluded that such an adjournment was unwarranted and would cause undue delay.

This Court reviews a trial court's decision regarding whether to grant an adjournment for an abuse of discretion. *People v Grace*, 258 Mich App 274, 276; 671 NW2d 554 (2003). A court may, in its discretion, "grant an adjournment to promote the cause of justice." MCR 2.503(D)(1). A "defendant must show both good cause and diligence" in order to demonstrate that an adjournment may be necessary. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). The

factors to evaluate when assessing whether good cause was established include whether the defendant "(1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Id.* (quotation marks and citation omitted).

The crux of defendant's argument on appeal is that the court's denial of his adjournment erroneously disregarded his constitutional right against self-incrimination. According to defendant, an adjournment until after the conclusion of his district-court case would have rendered him "free to testify" in his own defense in the instant case; without the adjournment, however, he felt compelled not to testify "lest it open the door to self-incrimination" with respect to the still-pending district-court case. Defendant, however, wholly fails to explain—nor is it at all apparent—how the testimony he would have offered in this case would have caused him to incriminate himself in the district-court case, such that his constitutional rights would have been implicated. Similarly, defendant does not explain how an adjournment would have had any bearing on his decision whether to testify in that district-court case. Defendant has fallen well short of establishing error on this basis.

No better is defendant's argument that adjournment was necessary because the timing of the trial prevented the parties from fully briefing issues such as jury instructions. As the prosecution explained below, the case was relatively uncomplicated and had already been pushed back a week with 28-days' notice before trial, and our review of the record does not bear out the suggestion that any matter was improperly handled as a result of the trial's schedule or pace. Defendant has failed to show an abuse of discretion on this basis, either.

Affirmed.

/s/ Philip P. Mariani
/s/ Allie Greenleaf Maldonado
/s/ Adrienne N. Young