*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHADD MATHIAS ANDERT,

        Defendant-Appellant.

UNPUBLISHED
May 21, 2019

No. 342545
Gogebic Circuit Court
LC No. 2017-000009-FC

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with a dangerous weapon, MCL 750.82(1). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve 3 to 15 years in prison. For the reasons set forth in this opinion, we affirm defendant's convictions and sentence.

## I. BACKGROUND

On December 29, 2016, defendant entered a gas station in Ironwood, Michigan and told the attendant to call 911 because he was being robbed. The attendant then activated a silent alarm. Shortly before the attendant telephoned 911, defendant removed two knives from his sweatshirt that were folded closed. Defendant placed the knives on the counter, then opened both knives and pointed them at the attendant from four or five feet away. The attendant believed that defendant wanted to rob the store and called 911, stating that he was being robbed by an armed man. While the attendant believed defendant was going to rob the store, he also testified that defendant never attempted to take anything. The attendant also testified that defendant told him he was not going to take anything, but defendant did not say that he would not hurt the attendant. The attendant testified that he felt threatened and nervous by the knives, and stood a distance away from defendant, hoping that defendant could not reach him.

Police arrived at the store approximately three minutes after the attendant made the 911 call. They arrested defendant without incident. Defendant later told police that he had lost his job and was trying to get arrested so that he could get shelter.

-1-

Following the close of testimony, the trial court instructed the jury as to the elements of assault with intent to rob while armed. The trial court also instructed the jury that it could convict defendant of the lessor crimes of attempted assault with intent to rob while armed or assault with a dangerous weapon. As previously indicated, the jury convicted defendant of assault with a dangerous weapon, and defendant was sentenced as stated above. This appeal then ensued.

## II. ANALYSIS

In his appeal, defendant first argues that the evidence was insufficient to convict him. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process[1] requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecutor produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Direct and circumstantial evidence and all reasonable inferences that may be drawn are considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *Hardiman*, 466 Mich at 429.

The elements of assault with a dangerous weapon (felonious assault) are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007); MCL 750.82(1). A defendant commits an assault when there is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Meissner*, 294 Mich App 438, 453-454; 812 NW2d 37 (2011) (citation and quotation marks omitted). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another. . . ." *Id.* at 454 (citation and quotation marks omitted).

Here, the attendant was "concerned" when defendant instructed him to call 911 before defendant told him that he was being robbed and pulled out the knives. The attendant recalled that defendant then opened both knives and pointed the open blades at him from four or five feet away. He said he took defendant "seriously" and thought that defendant wanted to rob him. He described being "a little nervous" when defendant pulled out the knives, and did not run because he did not want to encourage defendant's retaliation or cause panic for those around. He said that he did not know what would happen, or what defendant would do.

Defendant argues that the evidence was insufficient to demonstrate that he committed an assault. He asserts that this evidence did not establish that he made the attendant fear an

---

[1] US Const, Am XIV.

immediate battery. Defendant claims that the attendant only felt intimidated, or concerned, rather than fearful, and that defendant did not make a threat. This Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), citing *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). It is reasonable to infer that the attendant, who had knives drawn on him and then pointed at him, was placed in reasonable apprehension of an immediate battery. From the attendant's testimony it can reasonably be inferred that the attendant did not know what defendant was going to do and did not want to alarm defendant by trying to flee, and that he complied with the demand to call 911 out of reasonable fear that he could be assaulted with the knives that defendant was pointing at him. Thus, examination of the evidence and in a light most favorable to the prosecution, supports the jury's determination that defendant's actions placed the attendant in reasonable apprehension of an immediate battery.

Defendant similarly argues that he did not intend to place the attendant in reasonable apprehension of an immediate battery. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). To support his argument, defendant notes that he was several feet away from the attendant at the time he drew and pointed the knives at the attendant. However, from the evidence that defendant was pointing knives at and telling the attendant that he was going to rob the store, and that defendant told the police that he wanted to be incarcerated, a reasonable inference arises that he intended to instill fear in the attendant so that he would be compelled to call 911. Despite the distance, the attendant did not know what defendant would do and he could have feared that defendant would lunge at him with the knives or chase him. The situation was sufficiently compelling for the attendant to call the police and activate a silent alarm, as defendant intended. Because the evidence was sufficient to convict defendant beyond a reasonable doubt, defendant's due process rights were not violated. *Hampton*, 407 Mich at 366.

Next, defendant argues that offense variable 1 (OV 1) was improperly assessed at 15 points. This Court reviews the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165, 167 (2017).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Id*. at 89 n 7. The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

Offense variable 1 assesses the "aggravated use of a weapon." MCL 777.31(1). OV 1 is assessed at 15 points where "the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). To "threaten" means "to be a menace or source of danger to" or "to indicate impending evil,

-3-

mischief, or difficulty." *People v Brooks*, 304 Mich App 318, 321; 848 NW2d 161 (2014) (quotation marks omitted).

An assessment of 15 points is warranted where there was "some reason, however slight, for the victim to reasonably perceive that the weapon will actually be used, and moreover, will actually be used against the victim." *Brooks*, 304 Mich App at 322. The attendant testified that he felt concerned when defendant told him to call 911, and then nervous when defendant pointed knives at him from a few feet away and told him to call 911 and report that he was being robbed. The attendant did not know what defendant might do, and strategized to act unthreatening, activate a silent alarm, and call 911. That the situation did not escalate and that defendant did not lunge at the attendant with the knives does not mitigate that defendant threatened him with knives and caused reasonable apprehension of an immediate battery, as evidenced by the expressed fear and defensive behavior. Hence, OV 1 was correctly assessed.

Next, defendant argues that he was denied the counsel of his choice and that his trial counsel provided ineffective assistance. Defendant did not move for a new trial or seek a *Ginther*[2] hearing. Hence, these claims are not preserved. Generally, unpreserved claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment[3] right to counsel is reviewed de novo. *Id*. at 242.

Defendant argues that his case was transferred from his initial appointed attorney, whom he trusted, to his trial attorney without his consent, and in violation of his right to the counsel of his choice[4]. However, this Court has held: "As an indigent receiving counsel at public expense, defendant was not entitled to choose his attorney." *People v Ackerman*, 257 Mich App 434, 456; 669 NW2d 818 (2003), citing *People v Ginther*, 390 Mich 436, 441; 212 NW2d 922 (1973). The cases that defendant cites for the proposition that he had a right to choose his counsel involved non-indigent defendants with retained counsel. Defendant did not have the right to choose his trial counsel.

Regarding the ineffective assistance claim, a defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v*

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] US Const, Am VI.

[4] Although the record is unclear as to the precise reason for defendant's prior counsel to have stopped representing defendant, there was some indication from defendant's trial counsel that prior counsel had retired.

*Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

In his ineffective assistance claims, defendant begins by arguing that his trial counsel failed to object to venue as defendant suggested. Venue is the location, or forum, at which a trial is held. *People v Webbs*, 263 Mich App 531, 533; 689 NW2d 163 (2004). Venue is generally proper "in the county where the crime was committed." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010). Where there are "special circumstances where justice demands or statute provides," a trial court may move venue to another county. *Unger*, 278 Mich App at 254. Defendant does not articulate why venue would have been improper in Gogebic County. There was no apparent reason for defendant's counsel to object to venue and no argument regarding why a motion to change venue would have been meritorious. Consequently, defendant has failed to establish that counsel's performance "fell below an objective standard of professional reasonableness," *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007)*,* and he is not entitled to relief.

Defendant also claims that counsel ignored his request to object to certain questions posed by the prosecutor on grounds that the answers called for speculation. Defendant specifically cites a page in the record where the prosecutor asked the attendant whether he knew what would happen if he did not call 911 as defendant requested, and whether he called 911 because of defendant's words and actions. The first question did potentially call for a speculative response; however, the attendant responded that he did not know what would have happened. The second question was factual in nature. Simply stated, there were no speculative responses from which the jury could have been misled. As a consequence, defendant is not entitled to relief.

Defendant also takes issue with the fact that his trial counsel mentioned three times that defendant had previously been to jail. This occurred during voir dire, and in trial counsel's opening statement and closing argument. During voir dire, trial counsel asked whether defendant's previous incarceration would cause any potential juror to be biased. Otherwise, counsel was explaining that defendant's intent was not to rob the gas station, but to obtain housing he was familiar with (jail) rather than live homeless after losing his employment. Counsel was arguing that defendant's actions in the current case were therefore not criminal. Given the facts presented to trial counsel in this case, such an argument should be viewed in the context of whether the argument presented to the jury constituted sound trial strategy. This Court has, on numerous occasions, stated that we "will not substitute [our] judgment for that of counsel on matters of trial strategy, nor will [it] use the benefit of hindsight when assessing counsel's competence." *Unger*, 278 Mich App at 242-243. Our review of the record leads us to conclude that trial counsel's arguments to the jury constituted sound trial strategy. Our conclusion is based, at least in part, on our understanding that trial counsel's strategy contributed to the jury's acquittal of defendant on the charge of assault with intent to rob while armed. Accordingly, defendant is not entitled to relief on this issue.

Defendant also claims that his trial counsel was biased based on an overheard conversation between his counsel and the prosecutor discussing a social club and carpooling to a rotary club meeting. Because the function of defendant's trial counsel is to assist the defendant, "counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Pubrat*, 451 Mich at 603, quoting *Strickland v Washington,* 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The Michigan Rules of Professional Conduct provide that an attorney "shall not represent a client" if "the representation of that client will be directly adverse to another client" or "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests," except in certain circumstances. MRPC 1.7. To establish that his trial counsel provided ineffective assistance due to a conflict of interest, defendant must demonstrate that an actual conflict of interest negatively impacted his attorney's performance. *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998), quoting *Cuyler v Sullivan*, 446 US 335, 350; 100 S Ct 1708; 64 L Ed 2d 333 (1980). Defendant has not demonstrated that the social activities of his trial counsel, which may have overlapped with those of the prosecutor, were competing interests. Presumably, defendant's trial counsel could fulfill his responsibilities to defendant and continue social pursuits that the prosecutor might also be involved in. Additionally, defendant has not demonstrated that the performance of his trial counsel was adversely affected.

Even if defendant could have established deficient performance, it would be deemed to have prejudiced the defense only if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Jordan*, 275 Mich App at 667. Here, it is highly unlikely that any alleged deficiency would have impacted the outcome of the trial. There were only two witnesses and video recordings of defendant's interactions with both witnesses were played for the jury, including the entirety of defendant's interactions in the gas station. Accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that he was denied his right to an impartial jury. He did not preserve this issue. Unpreserved claims are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763. A defendant has a "right to a fair and impartial jury" with jurors who only deliberate about "the evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). An important function of voir dire is to allow the court and the parties to discover hidden bias that would render a potential juror incompetent. *People v Jendrzejewski*, 455 Mich 495, 509; 566 NW2d 530 (1997), citing *People v Tyburski,* 445 Mich 606, 619; 518 NW2d 441 (1994).

Defendant argues that several jurors should have been dismissed for cause under MCR 2.511(D) because they were biased against him. Where it is demonstrated that a prospective juror "comes within one of the categories enumerated" in MCR 2.511(D), the "trial court is without discretion" and "must" excuse the juror for cause. *People v Walker*, 162 Mich App 60, 64; 412 NW2d 244 (1987). "Otherwise, the decision to excuse for cause is within the discretion of the trial court." *Id*.

Defendant identified five potential jurors who had familiarity with the prosecutor (Nicholas Jacobs), or John Colassaco, an Ironwood Public Safety Officer who was a possible witness. However, although several jurors noted recognition of or past interactions with the prosecutor and Colassaco, none of the relationships described between any potential juror and

Jacobs or Colassaco were among those relationships that would disqualify a juror as described in MCR 2.511(D). Each of the prospective jurors denied any bias based on past interactions with Jacobs or Colassaco. Thus, defendant has not established that they should have been removed for cause. We also note that Colassaco did not testify, so even if there was bias it would have been inconsequential.

Defendant also states that the knowledge of two jurors about the case denied him an impartial jury. One had heard "what the case was going to be" after he told others that he was called to be a juror, but he "didn't know [the case]" and claimed that he could be fair and set aside what he had heard. Another had read of the crime in the newspaper, and informed the trial court that he understood that the newspaper article was not evidence he could consider and that he could set aside the information and fairly decide the case. MCR 2.511(D)(3) allows for the dismissal of a prospective juror who "shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be." Here, neither of the prospective jurors described having sufficient information about the case to cause them to decide the case in advance, and both stated that they could fairly decide the case.

Defendant also states that the jurors' community ties and familiarity with the prosecuting parties produced a jury that was not impartial. However, the contacts that three jurors had with the prosecutor and that two had with sources of information do not demonstrate that a juror was biased or could not fairly contemplate the evidence. Jurors are "presumed to be impartial until" shown otherwise, and the "burden is on the defendant to establish that a juror was not impartial or that a juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008) (citation and quotation marks omitted); *Walker*, 162 Mich App at 63. Here, defendant has not identified any factor that would place the impartiality of a juror in reasonable doubt.

Further, "a juror's expressed lack of prejudice and ability to render an impartial verdict are all that is required to uphold selection of the juror." *People v Hughes*, 85 Mich App 8, 18; 270 NW2d 692 (1978). Here, the trial court asked each potential juror identified by defendant whether they could judge the evidence fairly and was reassured to the extent that the trial court did not dismiss any of them for cause. "This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). Defendant has not demonstrated that the jury was biased. Accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that there was an error when the trial court was instructing the jury. Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413.

Here, the trial court initially instructed the jury to consider four crimes: assault with intent to rob while armed, attempted assault with intent to rob while armed, assault with a dangerous weapon, and attempted assault with a dangerous weapon. The trial court instructed the jury regarding the elements of assault with a dangerous weapon, and assault with intent to commit armed robbery. The trial court defined for the jury what constituted an attempt. After it instructed the jury and the jury was discharged to deliberate, the prosecutor noted that the written jury instructions did not include an instruction that the jury could convict defendant of attempted offenses. Thus, the trial court collected the jury's written instructions and replaced the page that dealt with the option to convict of attempted crimes. The jury was not told of the mistake. The trial court did not want to call attention to the mistake by informing the jury.

Defendant argues that the jury was not able to consider whether it should convict defendant of an attempted crime because it had incorrect instructions. However, the trial court had verbally instructed the jury that it should consider whether the crimes were merely attempted, and defined "attempt." Immediately after dismissing the jury to deliberate, the trial court was informed of the error, and issued a corrected written instruction by instructing a clerk, less than five minutes after the jury was dismissed, to "collect the instructions and we'll get them fixed and then they can *start* their deliberations." Thus, the jury's deliberations included the possibility of convicting defendant of attempt crimes.

Defendant cites *People v Clark*, 453 Mich 572, 590-591; 556 NW2d 820 (1996), which is inapposite. In *Clark*, the parties agreed before closing arguments that the prosecutor was required to prove that the defendant "kn[ew] her actions would cause death." After the defendant's closing argument, the trial court changed the jury instructions to include an instruction that the prosecutor had to prove that the defendant acted with "know[ledge] that her actions would result in serious injury." In reversing, the Supreme Court reasoned that "defense counsel was inadvertently misled by the court and argued the wrong theory to the jury," impairing counsel's ability to represent the defendant and the defendant's right to a fair hearing. *Id*. at 589-590. Here, the parties had discussed the final jury instructions with the trial court in chambers during a recess, and the parties received a copy of the proposed instructions prior to closing arguments. Defendant's argument in closing was that he did not attempt a crime, either to rob the gas station, or to assault the complainant, and that he acted only out of desperation for housing. Defendant's trial counsel specifically argued that he was not guilty of an attempted crime because he was not committing a crime. Then the trial court verbally instructed the jury that they could consider "attempt" crimes, and submitted corrected written instructions to the jury shortly after they were dismissed, including the possibility of convicting defendant of "attempt" crimes. Thus, defense counsel's argument was not compromised by the corrected written instructions. Defendant's right to a fair trial was not impaired. Accordingly, defendant is not entitled to relief on this issue.

Lastly, defendant argues that he was denied access to legal resources. Defendant failed to preserve this issue and review is therefore for plain error affecting substantial rights. *Carines*, 460 Mich at 763. Inmates have a "constitutional right of access to the courts." *People v Mack*, 190 Mich App 7, 20; 475 NW2d 830 (1991). "[P]risoners possess a due process right of reasonable access to the courts that guarantees them 'adequate, effective, and meaningful' opportunities to present their claims." *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 463; 639 NW2d 332 (2001), quoting *Bounds v Smith*, 430 US 817, 822; 97 S Ct 1491; 52 L

Ed 2d 72 (1977). "[I]n the absence of other forms of adequate legal assistance, this right of access to the courts requires providing prisoners with adequate assistance from persons trained in the law or adequate law libraries to assist prisoners in the filing of legal papers." *Mack*, 190 Mich App at 20, citing *Bounds*, 430 US at 828.

Defendant has not identified any ways in which he was denied access to the courts by a lack of legal resources while incarcerated. He was represented by counsel who prepared and presented legal arguments in his defense. Defendant's constitutional right to access the courts was satisfied when the trial court "offered defendant the assistance of counsel." *Mack*, 190 Mich App at 24 (citation and quotation marks omitted). "A state is not required under the law to offer a defendant law library access once it has fulfilled its constitutional obligation to provide him with competent legal assistance." *Id*. (citation and quotation marks omitted).

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering