*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DALLAS GENE FOSTER,

        Defendant-Appellant.

UNPUBLISHED
September 15, 2022

No. 357065
Berrien Circuit Court
LC No. 2019-016129-FC

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his conviction by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13). The trial court sentenced defendant to 25 to 53 years' imprisonment. We affirm.

## I. BACKGROUND

Defendant assisted his former fiancée at her home when she babysat the then four-year-old complainant when the complainant's father was at work. One day the complainant's father asked the child about her day at the babysitter's, and she told him that earlier that day defendant had licked her "butt" and motioned to her vaginal area. The complainant's father consulted with the police, and had her evaluated at the emergency room. Defendant told the police, and testified at trial, that he had only playfully licked the complainant's arm, and that he had assisted the child after she went to the bathroom by spitting on bathroom tissue and wiping her.

## II. ANALYSIS

### A. INSUFFICIENT EVIDENCE

Defendant argues that insufficient evidence supported his conviction. We disagree.

-1-

We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process[1] requires that every element of a crime be proven beyond a reasonable doubt to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecution produced evidence sufficient to support a conviction, "an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from it, are properly considered. *Id.*

MCL 750.520b(1) provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" under various circumstances, including, under Subsection (1)(a), when "[t]hat other person is under 13 years of age." Defendant argues that there "was no credible evidence at trial that [his] tongue was touching [the complainant's] vagina."

The complainant testified that defendant "wiggled my butt" with his tongue while she was on the couch. The complainant's father testified that the child had told him that defendant had licked her "butt" while babysitting her, and that, when he asked her to show him where defendant licked, she pointed to her vagina and said that her pants were down at the time. Later that day, the complainant reported to a sexual assault nurse examiner that she was at the emergency room "because he licked my butt." During therapy after the incident, the complainant told her therapist that she did not want to go to the babysitter's home any longer because defendant licked her with her pants down more than once while she was there, and she pointed to her vaginal area. A forensic scientist reported that DNA testing strongly indicated that defendant's DNA was present in saliva found in the panel of the complainant's underwear, and on a vulvar swab taken of the complainant's anatomy during an examination. Even though the complainant was five years old at trial and did not use the proper technical nomenclature for her anatomy, when viewed in a light most favorable to the prosecution, reasonable jurors could conclude beyond a reasonable doubt that the evidence established that defendant licked the complainant's vagina.

Defendant protests that he explained the presence of his DNA on the complainant's vagina during his statement to the police, and in his testimony that he had used his saliva to moisten bathroom tissue. The jury, however, had the duty and the best ability to determine defendant's credibility. An appellate court does "not interfere" with the fact-finder's "assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Instead, " 'a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), quoting *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

---

[1] US Const, Am XIV; Const 1963, art 1, § 17.

Defendant alternatively argues that, assuming that the evidence established that he licked the complainant's vagina, there was no evidence that his tongue actually went beyond mere contact to actual penetration. See *People v Payne*, 90 Mich App 713, 722; 282 NW2d 456 (1979). The CSC statute, however, defines sexual penetration as "sexual intercourse, *cunnilingus*, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r) (emphasis added). " '[C]unnilingus requires the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself [sic], or the mons pubes [sic].' " *People v Legg*, 197 Mich App 131, 133; 494 NW2d 797 (1992) (alterations in original), quoting *People v Harris*, 158 Mich App 463, 470; 404 NW2d 779 (1987). Here, the complainant described defendant performing cunnilingus on her genitalia. DNA evidence obtained from a vulvar swab also established that defendant had done so. Such evidence supported the jury's determination that defendant committed CSC-I.

## B. INSTRUCTIONAL ERROR

Defendant argues that he is entitled to a new trial because of erroneous jury instructions. However, at trial defense counsel expressed satisfaction with the instructions as given. When a party expresses satisfaction with the instructions as given to the jury, the party has waived any claim of error respecting the instructions. *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017). Such waiver extinguishes any error and precludes appellate review. *People v Carter*, 462 Mich 206, 215, 219; 612 NW2d 144 (2000).

We review unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In *Carines*, our Supreme Court explained:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (quotation marks, alteration, and citations omitted).]

A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). "Jury instructions must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *People v Kurr*, 253 Mich App 317, 328; 654 NW2d 651 (2002). There is no error where the

instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413.

Defendant argues that the trial court erred when it instructed the jury that "[t]he case, based upon the evidence, has one count now, and so that's what you will hear now because that's what the evidence supports that came in during the record." Defendant states that the instruction was misleading because it suggested that the prosecution had proved its case for the remaining charge. However, the trial court did not reference defendant's guilt in the challenged statement, which was not an instruction pertaining to defendant's culpability. The court stated that the evidence supported one count, not one conviction. The statement communicated to the jury only that it should not render a verdict in connection with the count that had been dismissed.

Jury instructions are to be reviewed in their entirety, and when considered in context, it is apparent that the trial court informed the jury that it had dismissed a count against defendant that the jury had initially been expected to consider. After both parties rested, and with the jury outside the courtroom, defendant moved for a directed verdict of acquittal on a CSC-I charge predicated on penetration with his foot and the prosecution agreed. The trial court considered the motion and agreed to dismiss that charge. The trial court then included with its final jury instructions the following:

> So, now, these are my final instructions, and I will tell you that as I indicated before, during the primary instructions, that these may change. The instructions may change from the preliminaries to the finals, and you can see here that they actually have. The case, based upon the evidence, has one count now, and so that's what you will hear now because that's what the evidence supports that came in during the record.

The trial court's explanation did not communicate anything to the jury about defendant's guilt on the remaining count, only that it could not find defendant guilty of the dismissed count.

Next defendant argues that the trial court improperly instructed the jury regarding the penetration element of CSC-I. The trial court instructed the jury as follows:

> The defendant is charged with the crime of first-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, excuse me, that the defendant engaged in a sexual act that involved touching of [the complainant's] genital opening and/or genital organ with the defendant's mouth or tongue. Genital opening begins at the labia majora.

Defendant protests that the instruction allowed the jury to find him guilty of CSC-I for merely contacting the complainant's vagina when a conviction of CSC-I requires sexual penetration. See MCL 750.520b(1). We agree that it would have been plain error to allow the jury to find defendant guilty of CSC-I for only a nonpenetrative touching of the complainant's vagina.

However, the trial court's instructions did not premise CSC-I on such mere touching; the court specified that it required "touching of [her] genital opening and/or genital organ with the defendant's mouth or tongue." As noted, the CSC statute and pertinent caselaw recognize

-4-

cunnilingus as sexual penetration whether or not actual entry of the vaginal canal takes place. MCL 750.520a(r); *Legg*, 197 Mich App at 133; *Harris*, 158 Mich App at 470. Accordingly, the instruction equating penetration with defendant's touching of the complainant's genital opening with his tongue reflected the statutory definition of sexual penetration. Further, the female genital opening includes the labia majora, which is beyond the body surface. *People v Bristol*, 115 Mich App 236, 238; 320 NW2d 229 (1981). "Defendant's *touching* with his mouth of the urethral opening, vaginal opening, or labia establish cunnilingus" as statutorily defined. *Legg*, 197 Mich App at 133 (emphasis added). Therefore, an instruction that sexual penetration includes oral touching of the female genital opening is consistent with the pertinent statute and caselaw.

In his supplemental brief, defendant argues that the trial court erred insofar as it did not emphasize that the statutory definition of "sexual penetration" includes "any . . . intrusion, however slight, of any part of a person's body." See MCL 750.520a(r). However, because the instructions given included that defendant was charged with touching the complainant's "genital opening and/or genital organ with the defendant's mouth or tongue," and the definition of "sexual penetration" also includes touching another's genital opening with the tongue, the trial court properly eschewed instructing the jury on the actual-intrusion facet of sexual penetration. The trial court did not use the words "sexual penetration," but the instructions given described the only way, as this case was presented, that the jury could find that defendant sexually penetrated the complainant's genital opening by cunnilingus.

Defendant also argues in his supplemental brief that the instructional error was prejudicial because the complainant's statement that defendant "licked my butt" did not establish sexual penetration nor permit such an inference. The evidence presented at trial, however, sufficed to establish beyond a reasonable doubt that defendant committed CSC-I. The evidence indicated that the complainant's reference to her "butt" actually referred to her vagina. She physically demonstrated to her father and her therapist that she meant her vagina. Moreover, defendant's DNA was detected in saliva on the crotch of the complainant's underwear, and on vulvar swabs taken of the complainant.

For these reasons, the challenged instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413. Defendant has not demonstrated that the instruction undermined the reliability of the verdict, or otherwise constituted plain error.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues in his supplemental brief that defense counsel provided ineffective assistance by failing to object to the jury instructions insofar as they covered the sexual penetration element of CSC-I. See *People v Ullah*, 216 Mich App 669, 685; 550 NW2d 568 (1996) (a trial attorney's failure to object to improper jury instructions can constitute ineffective assistance). Because we conclude that the trial court correctly instructed the jury on the penetration element, any attendant objection premised on instructional error would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

## D.  RIGHT TO A SPEEDY TRIAL

We review a trial court's decision on a motion to dismiss for an abuse of discretion.  *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005).  The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes.  *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).  We review de novo the constitutional question whether a defendant was denied the right to a speedy trial.  See *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006).  A trial court's factual findings are reviewed for clear error.  *Id*.

A guarantee of the right to a "speedy and public trial" for a criminal defendant is found in both the United States and Michigan Constitutions, and in Michigan is enforced by statute and court rule.  *Williams*, 475 Mich at 261, citing US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A).  The purpose of the speedy-trial guarantee is to " 'minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.' "  *People v Sierb*, 456 Mich 519, 531 n 19; 581 NW2d 219 (1998), quoting *United States v MacDonald*, 456 US 1, 8; 102 S Ct 1497; 71 L Ed 2d 696 (1982).  To determine whether a defendant has been denied the right to a speedy trial, a court should balance the following four factors set forth in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972):  " '(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant.' "  *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999), quoting *Williams*, 475 Mich at 261-262.  In this case, defendant asserted his right to a speedy trial in his motion to dismiss.

"The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest."  *Williams*, 475 Mich at 261, citing *United States v Marion,* 404 US 307, 312; 92 S Ct 455; 30 L Ed 2d 468 (1971).  It is presumed that a defendant is prejudiced after a delay of 18 months, upon which "the burden shifts to the prosecution to show that there was no injury," and there is "an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial."  *Williams*, 475 Mich at 262 (quotation marks and citation omitted).

In this case, an arrest warrant for defendant was issued and defendant was arraigned on October 30, 2019.  Defendant apparently remained incarcerated until his trial began on October 14, 2020.  Defendant, therefore, remained incarcerated for almost a year between his arrest and trial.  Regarding the reasons for the delay, it is undisputed that the COVID-19 pandemic was responsible for the greater part of it.  The trial court explained that it could not hold a trial for defendant because of logistical problems resulting from compliance with administrative orders from March 2020 up to the July 2020 hearing on defendant's motion.  The trial court noted that defendant's case was the oldest one under its jurisdiction involving a defendant in custody while awaiting trial, and stated that it would be scheduled for trial as soon as trials resumed.  The trial court also noted that defendant's agreement for an adjournment of all hearings until his DNA results were available partly caused the delay, which lasted from late January, before the pandemic, until defendant filed his motion for dismissal in June 2020.  Defendant does not dispute the trial court's factual findings.

Delays and docket congestion are inherent in the court system, and, even if they are "'technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.'" *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158, 167 (1997), quoting *People v Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993). In *United States v Smith*, 494 F Supp 3d 772, 783 (ED Cal, 2020), the court found that "emergency health measures to limit the spread of COVID-19" were responsible for a delay in the defendant's trial that did not "weigh against the Government" because "the Court's inability to safely conduct a jury trial is a good-faith and reasonable justification for the delay." Similarly, in this case, the trial court could not hold the prosecution responsible for the docket congestion and delays caused by COVID-19 safety protocols. The prosecution had no ability to bring defendant to trial within several months of his arrest, and should not be held responsible for a delay resulting from the need to protect the health of all trial participants, and over which plaintiff had no control. Further, as the trial court noted, the prosecution lacked responsibility for the delay resulting from defendant's agreement, before the pandemic, to adjourn until DNA testing results became available. Therefore, the one-year delay from arrest to trial could not properly be imputed to plaintiff.

The fourth element, prejudice, is critical to the analysis of whether defendant's speedy trial rights were abridged. *Cain*, 238 Mich App at 112. "A delay that is under eighteen months requires a defendant to prove that the defendant suffered prejudice." *Id*. Defendant did not argue during his motion hearing that the 12-month delay prejudiced him. Now he claims that he suffered prejudice from that delay because he was not able to freely speak to his trial counsel or potential witnesses while incarcerated. "In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994). "[I]n determining prejudice to a defendant, we do not look at how the prosecutor's case was improved during the delay, but to whether the defendant's defense was degraded." *People v Holtzer*, 255 Mich App 478, 494; 660 NW2d 405 (2003). In this case, defendant's incarceration may have burdened his communication with others, but even defendant does not assert that such communications were denied. Further, defendant does not identify any potential witnesses with whom he was prevented from speaking, and at trial presented only his own testimony in his defense. Defendant has failed to demonstrate that his defense suffered prejudice by the delay.

In sum, considering the four *Barker* factors (length of delay, reason for delay, the defendant's assertion of the right, and prejudice), defendant has not established that the prosecution or the court violated his right to a speedy trial. The one-year delay resulted from factors that could not be imputed to plaintiff or the trial court, and could not have been avoided. Moreover, defendant has failed to establish that he suffered prejudice by the delay. Accordingly, the trial court did not abuse its discretion by denying defendant's motion to dismiss based on a speedy-trial violation.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford