*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VICTOR PEREZ RUIZ,

        Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 362790
Lenawee Circuit Court
LC No. 2021-020379-FC

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I) (victim under 13 and defendant over 17), MCL 750.520b(1)(a) and (2)(b); and second-degree criminal sexual conduct (CSC-II) (victim under 13 and defendant over 17), MCL 750.520c(1)(a). Defendant was sentenced to 25 to 40 years' imprisonment for CSC-I and 38 to 180 months' imprisonment for CSC-II. We affirm defendant's convictions and sentence.

## I. BACKGROUND

On April 3, 2019, defendant babysat his step grandchildren, EC and LS, at his home. EC was eight years old at the time. Defendant took the children to Walmart and bought them each a gift. When they returned from the store, LS went to play video games. Defendant told EC to go to the bedroom of his wife, Marcia. In the bedroom, defendant rubbed EC's vagina with his penis and performed cunnilingus on her. After the first incident, EC followed defendant's request to shower. EC watched television before defendant took her in the basement, outside of the bedroom of defendant's son, Anthony Ruiz. Defendant repeated the same acts on EC in the basement. After the second incident, EC washed up and they ate lunch. Later, the children's mother, Lisa, came and took the children home.

Defendant denied both incidents and testified that Anthony was home all day, and they both even watched EC draw and paint pictures. Anthony confirmed the testimony and further testified that he never saw defendant assault EC. EC and LS both testified that they did not see Anthony that day. EC testified that Anthony slept in his room in the basement all day. LS himself spent most of the day sitting at the dining room table playing video games with his headphones on

-1-

talking to players online. Defendant testified that Lisa came at 3:00 p.m., leaving no time for the incidents to occur, but EC testified that Lisa came a couple hours after the second incident.

On appeal, defendant argues that trial counsel was ineffective for failing to offer evidence to bolster defendant's credibility and aid in his defense, eliciting damaging testimony during cross-examination, and misstating the burden of proof during his opening statement. He argues that he was prejudiced by the cumulative effect of these errors. Further, he argues that the trial court erroneously instructed the jury, and trial counsel was ineffective for failing to object to the error. Finally, defendant argues that his mandatory minimum sentence of 25 years' imprisonment was unconstitutional.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial counsel was ineffective for (1) failing to admit evidence in support of the defense strategy, (2) eliciting damaging and improper credibility testimony, and (3) stating the wrong burden of proof to the jury.[1] Defendant contends that but for trial counsel's cumulative errors, there was a reasonable probability of a different outcome at trial. We disagree. For the reasons we will discuss below, we do not find counsel was deficient regarding evidence and trial strategy about witness credibility. We do conclude, however, counsel did misstate the law in his opening statement regarding the burden of proof, and was deficient in this regard; but this mistake was corrected multiple times by defense counsel and the court, and as a result did not impact the case.

## A. STANDARD OF REVIEW

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). This Court reviews the trial court's findings of fact for clear error, while it reviews questions of law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted).

Both the United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. In order to obtain a new trial, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the

---

[1] Defendant moved both this Court and the trial court for an evidentiary hearing to consider each of the asserted errors, which both courts denied. *People v Ruiz*, unpublished order of the Court of Appeals, entered November 15, 2023 (Docket No. 362790). Because no evidentiary hearing was held below, our review is limited to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012).

reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). We will not substitute our own judgment for that of counsel or use the benefit of hindsight in assessing trial counsel's competence. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Counsel is not ineffective for failing to raise meritless or futile objections. *Eisen*, 296 Mich App at 329.

## B. EVIDENCE DEFENDANT ARGUES SHOULD HAVE BEEN OFFERED AT TRIAL

Defendant first argues that trial counsel's performance was deficient because he failed to move for the admission of a Walmart receipt showing that defendant purchased EC and LS gifts worth a total of $46.07 at 1:44 p.m. on the day of the incident. On appeal, defendant asserts that the receipt would have helped corroborate his testimony that there was not enough time after he took the children to the store, picked up lunch, and ate lunch with them for defendant to sexually assault EC before Lisa arrived to pick the children up.

At trial, EC testified defendant took her and LS to Walmart and defendant assaulted her twice after they returned from the store. A couple hours after the incidents, her mother arrived to pick them up. Both EC and her brother testified they stayed all day at defendant's house. In contrast, defendant testified that they left Walmart at approximately 1:45 p.m., picked up food, and ate at the house, all before Lisa arrived before 3:00 p.m., leaving no time for either incident to occur.

Trial counsel's strategy included eliciting testimony from defendant that there was not time for the incidents to occur. The timestamp on the Walmart receipt had limited value in relation to this strategy. No one contested the time that defendant went to Walmart. More importantly, testimony conflicted regarding the time that EC's mother came to pick up the children. Because of the conflicting testimony, no witness established a definitive timeline of the day. Admission of the receipt showing that defendant purchased the gifts at 1:44 p.m. would not show that there was no time for defendant to assault EC before her mother arrived. Accordingly, trial counsel's decision not to admit the receipt did not fall below an objective standard of reasonableness. See *Vaughn*, 491 Mich at 670.

Defendant also asserts that the receipt was necessary to rebut the assertion that defendant bought EC an expensive gift in exchange for her silence. At trial, EC testified that defendant bought her a "Game Boy" and EC's father testified that defendant bought EC a $120 gift in exchange for her silence. Although corroborative, the receipt was unnecessary to rebut the testimony that defendant bought EC an expensive gift to buy her silence. EC called the gift a "Game Boy" in her testimony, but she did not testify how much the gift cost. EC's father, who was not present the day of the incident, was the only witness to testify that defendant bought an expensive gift. His testimony was rebutted by Anthony's testimony that defendant bought a cheap "mini game" "rip off" and defendant's testimony that he had a receipt showing that he bought EC

a $20 handheld game and LS a $20 to $25 gaming gift card.  Trial counsel's decision to elicit this evidence through testimony was a matter of trial strategy.  Given the strong presumption that trial counsel's decisions are the result of sound trial strategy, we cannot conclude that trial counsel's decision not to offer the receipt as evidence fell below an objective standard of reasonableness.  See *id*.

Next, defendant argues that trial counsel performed deficiently because he failed to admit text messages wherein EC allegedly texted Marcia to request to go to her and defendant's house nine days after the incident.  Defendant asserts that these text messages would cast doubt on EC's testimony because she wanted to go to her perpetrator's house within days of the incident.  At trial, trial counsel attempted, but failed to admit the text message through EC.  Trial counsel asked EC if she sent defendant the text message.  After reviewing the text message, EC still did not remember sending it.  Trial counsel asked EC to read the contents of the text message aloud, but the trial court sustained an objection from the prosecution for lack of foundation.  Without the proper foundation, evidence cannot be admitted.  See *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (2013); MRE 901.  Defendant does not assert that the trial court erroneously sustained the objection.  The failure to admit the text message was not a result of trial counsel's deficient performance, but because EC did not remember the text message.  Further, trial counsel could not alternatively admit the text message through defendant.  Although unclear who the text message was sent to, the text message was likely sent to Marcia and not defendant because a text included in the screenshot tells the recipient to share a phone number with defendant.  We reject defendant's claim that trial counsel was ineffective for failing to admit evidence through no fault of his own.

Defendant contends that trial counsel was ineffective for his decision not to seek admission of a video depicting the layout of defendant's house.  Defendant specifically claims that, by demonstrating how close to the bedroom and basement doors LS sat, the video showed that LS could not have missed seeing defendant take EC through either door to the locations where the assaults occurred.  At trial, LS testified that he sat where he could see the kitchen, living room, and the two doors.  However, he also testified that he was not paying attention because he was wearing headphones and playing video games.  Contrary to defendant's assertion, the video would not contradict LS's testimony.  LS did not testify that he could not have possibly seen defendant take EC through the doors from where he sat, but that he was not paying attention to what EC or defendant did at the time.  Trial counsel's performance did not fall below an objective standard of reasonableness for failing to admit the video.  See *Vaughn*, 491 Mich at 670.

Final in defendant's assertion of evidentiary errors, defendant argues that trial counsel was ineffective when he did not admit EC's artwork from the day of the incident.  Defendant contends that the artwork corroborated Anthony's testimony that he was in the home that day and watched EC draw, but saw nothing indicative of an assault.  At trial, Anthony and defendant both testified that Anthony was in the house and saw EC drawing and painting.  In contrast, both EC and LS testified that they did not see Anthony that day.  Neither EC nor LS testified that EC made artwork that day.  "When credibility is a dominant consideration in ascertaining guilt or innocence, other independent evidence apart from the testimony of the defendant and the victim is particularly vital to the fact-finding process." *People v Brown*, 506 Mich 440, 453; 958 NW2d 60 (2020).  Although credibility was a dominant consideration in this case, admission of the artwork would not corroborate Anthony's testimony or discredit EC's and LS's testimony.  Anthony did not describe the pictures he allegedly observed EC making.  Nothing in Anthony's testimony demonstrated that

-4-

he saw EC drawing and painting these particular pictures on that particular day. Accordingly, even if the jury accepted that EC made the artwork, the jury had no basis to accept that the artwork was made the day of the incident. Admission of these pictures would not demonstrate that EC lied about seeing Anthony that day and had little corroborative benefit. Therefore, defendant has not overcome the presumption that trial counsel reasonably determined that the artwork would not aid his defense strategy.

Defendant also argues that trial counsel's performance was deficient because he asked EC's parents, Troy and Lisa, about EC's truthfulness at trial, to which they stated that she was always truthful, thereby bolstering her credibility. While it is correct trial counsel asked EC's parents about her truthfulness, it is apparent that trial counsel did not seek to bolster her credibility. Instead, trial counsel elicited Troy's and Lisa's testimony to reveal their bias. When trial counsel asked Troy and Lisa if EC ever lied, both adamantly affirmed that EC "never" lied. Troy said this after he just testified that EC initially lied to him twice when he asked her about the incident. Both Troy and Lisa's adamant testimony that EC, a young child, never lied in her life, demonstrated their bias and hurt their credibility. Trial counsel's elicitation of this testimony was reasonable trial strategy.

## C. STATEMENTS BY DEFENSE COUNSEL REGARDING BURDEN OF PROOF

Defendant argues that trial counsel's performance was deficient because he misstated the burden of proof, leading the jury to believe that one party or the other had to be believed beyond a reasonable doubt. During opening statements, trial counsel stated the following when acknowledging that witness testimony alone was enough to convict defendant:

> [T]he prosecutor is absolutely right, when they say, hey, on a case like this, you don't need any corroboration. The witness' [sic] testimony or the victim's testimony is enough. You don't need to have anything other than testimony to convict. That's absolutely true.
>
> But that also applies for the [d]efendant. You don't need anything other than the [d]efendant's testimony either. *This case will come down to who you believe beyond a reasonable doubt*. [emphasis added.]

The burden of proof rests solely on the prosecution. See *People v Posey*, 512 Mich 317, 323; 1 NW3d 101 (2023) ("For a jury to find a defendant guilty of a charged crime, the prosecution must demonstrate that the defendant is guilty of every element of a crime beyond a reasonable doubt.") In context, trial counsel attempted to explain to the jurors that they can believe defendant's testimony without corroboration as well. However, the manner in which trial counsel expressed this point implied that the jury had to either believe the prosecution's witnesses beyond a reasonable doubt, or the defense's witnesses beyond a reasonable doubt. Consequently, trial counsel implied a shift of the burden to both the prosecution and defense that was not reasonable trial strategy. Therefore, trial counsel performed deficiently when he misrepresented the burden of proof.

Although trial counsel's performance was deficient, defendant cannot establish that but for this deficiency, a reasonable probability existed that the outcome of the trial would be different.

Trial counsel misstated the law briefly during his opening statement. This misstatement was corrected numerous times. Both before and after opening statements, the trial court instructed the jury on the proper burden of proof. The prosecution also correctly stated the burden of proof during opening statements. During closing arguments, both parties correctly stated the burden of proof. Then, the trial court instructed the jury on the correct burden of proof for a third time before jury deliberations. "[J]urors are presumed to follow their instructions." *Unger*, 278 Mich App at 235. Any confusion from trial counsel's brief misstatement of the law was cured by the trial court's correct instruction. Accordingly, defendant cannot establish prejudice.

Finally, defendant argues that trial counsel's errors cumulatively undermined the outcome of this case and denied him a fair trial. "[T]he cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). Because trial counsel's performance contained only one nonprejudicial deficiency, there was no cumulative error that would warrant a new trial.

### III. INSTRUCTIONAL ERROR OR INEFFECTIVE ASSISTANCE

Defendant argues that he was denied due process because the trial court read an erroneous instruction for CSC-I. Alternatively, defendant argues that trial counsel was ineffective for failing to object to the jury instruction. Review of the purported erroneous instruction is waived. Trial counsel was not ineffective for failing to object to the instruction.

### A. STANDARD OF REVIEW

Trial counsel's "affirmative expression of satisfaction with the trial court's jury instruction waive[s] any error" with the jury instructions. *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009). "When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). Trial counsel waived appellate review when he twice affirmed his satisfaction with the instructions. Trial counsel's waiver extinguished any error, leaving no error to review. *Chapo*, 283 Mich App at 372-373.

### B. CSC-I JURY INSTRUCTION

Alternatively, defendant asserts that trial counsel was ineffective for failing to object to the jury instruction. Defendant contends that the trial court erred regarding the penetration element of CSC-I when it instructed the jury as follows:

> The [d]efendant is charged with the crime of first degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the [d]efendant engaged in a sexual act that involved touching of [EC's] genital organs with the defendant's mouth or tongue.

Defendant contends that the instruction failed to distinguish CSC-I from lesser offenses that only require touching for sexual gratification. We disagree.

We review this unpreserved claim of ineffective assistance of counsel for error apparent on the record. *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020). Criminal defendants have "the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995); see also US Const, Ams VI, XIV; Const 1963, art 1, § 20. "Jury instructions are to be read as a whole rather than extracted piecemeal to establish error." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). There is no error when the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v McFall*, 224 Mich App 403, 412-413; 569 NW2d 828 (1997) (quotation marks and citation omitted).

To convict defendant of CSC-I, the jury had to find that defendant engaged in sexual penetration with a person under 13 years of age. *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." MCL 750.520a(r). Although the trial court did not use the words "sexual penetration," the instruction given described the only way, with the facts presented in this case, that the jury could find that defendant sexually penetrated the victim's genital opening—by performing cunnilingus. Both the CSC statute and caselaw recognize cunnilingus as a form of sexual penetration regardless of whether entry of the vaginal canal occurs. MCL 750.520a(r); *People v Legg*, 197 Mich App 131, 132-133; 494 NW2d 797 (1992). It is irrelevant that the trial court did not use the word "cunnilingus" because the instructions described the specific act that the jury needed to convict defendant of CSC-I under a theory of cunnilingus—a sexual act that involved touching of the victim's genital organs with the defendant's mouth or tongue. *Legg*, 197 Mich App at 133 (defining cunnilingus as "the placing of the mouth of a person upon the external genital organs of the female . . . .") (quotation marks and citation omitted). Accordingly, the trial court did not err when it instructed the jury regarding CSC-I. Because we conclude that the trial court properly instructed the jury, an objection to this instruction would have been futile. *Eisen*, 296 Mich App at 329.

## IV. MANDATORY SENTENCING

Finally, defendant argues that the trial court's application of the 25-year mandatory minimum sentence was cruel or unusual both facially and as applied to him. We disagree.

### A. STANDARD OF REVIEW

Because defendant did not preserve this claim by raising the issue in the trial court, we review it for plain error affecting his substantial rights. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). However, the constitutionality of a statute is a question of law that we review de novo. *Id*.

## B. CRUEL AND UNUSUAL PUNISHMENT REVIEW

The Eighth Amendment of the United States Constitution prohibits "cruel and unusual punishment." US Const, Am VIII. The Michigan Constitution more broadly prohibits "cruel or unusual punishment." Const 1963, art 1, § 16; *People v Taylor*, 510 Mich 112, 124 n 9; 987 NW2d 132 (2022). When assessing whether a punishment is cruel or unusual, this Court assesses the four following factors: (1) the harshness of the penalty compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed for other offenses in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the goal of rehabilitation. *People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992).

Defendant presents both a facial and an as-applied challenge to the constitutionality of MCL 750.520b(2)(b). "A facial challenge attacks the statute itself and requires the challenger to establish that no set of circumstances exists under which the [a]ct would be valid." *People v Johnson*, 336 Mich App 688, 695; 971 NW2d 692 (2021) (quotation marks and citation omitted; alteration in original). Whereas "[a]n as-applied constitutional challenge is based upon the particular facts surrounding defendant's conviction and sentence." *People v Adamowicz (On Second Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 330612); slip op at 9 n 10.

First, defendant's facial challenge is foreclosed by binding precedent. A conviction of CSC-I under MCL 750.520b(2)(b) is subject to a mandatory minimum of 25 years' imprisonment. In *People v Benton*, 294 Mich App 191, 204-207; 817 NW2d 599 (2011), after addressing the *Bullock* factors, we held that the 25-year mandatory minimum sentence in MCL 750.520b(2)(b) was not cruel or unusual. Defendant concedes that *Benton* is controlling Michigan caselaw. MCR 7.215(C)(2). Because published caselaw holds that the 25-year mandatory minimum sentence under MCL 750.520b(2)(b) is not facially cruel or unusual, we conclude that defendant did not demonstrate plain error affecting his substantial rights.

Second, defendant's as-applied challenge to his sentence fails because he did not present unusual circumstances to overcome the presumption of proportionality. "Legislatively mandated sentences are presumptively proportional and presumptively valid." *Burkett*, 337 Mich App at 637 (quotation marks and citation omitted). "[A] proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Burkett*, 337 Mich App at 637 (quotation marks and citation omitted).

Defendant argues that his sentence was disproportionate because of his age and lack of prior criminal history. Defendant does not address the *Bullock* factors or indicate how his age and lack of prior criminal history relate to these factors in his analysis. A defendant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 936 NW2d 291 (2001). Accordingly, we only address whether defendant raised sufficiently unusual circumstances to overcome the presumption of proportionality.

Defendant cites journals indicating that the statistical likelihood that someone would molest a child peaks between ages 30 and 40, and decreases to nearly zero after age 70—the age defendant will be after serving only 10 years of his 25-year-minimum sentence.[2] The seriousness of the offense is not lessened by defendant's age at the time of the offense. This Court has explained that a "defendant's age is insufficient to overcome the presumption of proportionality." *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 6. Defendant's lack of criminal history is also insufficient to overcome the presumption that his legislatively-mandated sentence was proportional. *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994). Accordingly, no unusual circumstances overcome the presumption of proportionality in this case.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford

---

[2] See e.g., Hanson, *Age and Sexual Recidivism: A Comparison of Rapists and Child Molesters*, Dep't of the Solicitor General Canada (2001), available at <https://www.publicsafety.gc.ca/cnt/rsrcs/pblctns/sxl-rcdvsm-cmprsn/sxl-rcdvsm-cmprsn-eng.pdf> (accessed April 12, 2024).